# UNITED STATES *v.* McMULLEN ET AL., ADMINISTRATORS.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 100. Argued December 13, 14, 1911.—Decided January 9, 1912.

Under the provisions of the contract in this case for possible extensions of time, the sureties on the bond which was part of the contract were not discharged by reason of the extensions which were granted pursuant to the contract.

Where there is a penalty for avoidable delay in performance of a government contract, sureties are not discharged because the Government does not take steps against the contractor to collect the penalties.

*Quære,* whether where the contractor is given a right to extension of time if the Secretary of Navy approves, the Secretary is to be regarded as a third party or as representing the United States.

Annulling a contract by the Government does not mean in this case that the Government rescinded or avoided it, but that it would proceed no further with the contractor and would charge him with the difference in cost caused by his default.

When the Government relets a contract after default, the price for which it is relet must be assumed to be reasonable in absence of evidence to the contrary, and this is especially so when the difference is less than the sum stipulated as liquidated damages.

When the Government relets a contract, the sureties are not relieved because there are differences in the terms which diminish the cost of the work as relet.

A government contract is not unenforcible for want of certainty and mutuality because it allows changes by the United States, subject to provisions for change of compensation where proper.

The amount of work to be done under a government contract depends upon the appropriations made by Congress for carrying on the work, and this is implied whether expressed in the contract or not.

Where the answer does not deny that the contract was signed by the United States and the contract declares that it is, and it is signed by the Chief of Bureau of Yards and Docks, there is admission by implication that it was signed by the United States and is sufficient.

167 Fed. Rep. 460; 93 C. C. A. 96, reversed.

THE facts, which involve the liability of contractors and sureties upon a contract with the United States for dredging and a bond given for completion thereof, are stated in the opinion.

*The Solicitor General* for the United States.

*Mr. Burke Corbet,* with whom *Mr. John R. Selby* and *Mr. Edward J. Lynch* were on the brief, for defendants in error:

The time of performance was extended without the consent of sureties, and thereby they are discharged. *Miller* v. *Stewart,* 9 Wheat. 680; *Reese* v. *United States,* 9 Wall. 13; Fed. Cas. No. 9591; *Driscoll* v. *Winters,* 122 California, 66.

The only rule for the construction of a surety's obligation to perform a contract of suretyship is that of *strictissimi juris.* *Guarantee Co.* v. *Pressed Brick Co.,* 191 U. S. 416; *United States* v. *American Surety Co.,* 200 U. S. 197; see also *A. T. & D. Co.* v. *Laurinburg,* 163 Fed. Rep. 695; *Henry* v. *Artona Ins. Co.,* 79 Pac. Rep. 42; *Boppart* v. *Illinois Surety Co.,* 126 S. W. Rep. 771; *Lonergan* v. *S. A.-L. & T. Co.,* 104 S. W. Rep. 1067; *Smith* v. *United States,* 2 Wall. 235; *United States* v. *McIntyre,* 11 Fed. Rep. 597; *United States* v. *Freel,* 186 U. S. 309.

A change in the time of performance of a contract is a material change, and will release sureties. *Earnshaw* v. *Boyer,* 60 Fed. Rep. 528; *Rowan* v. *Sharp's Rifle Mfg. Co.,* 33 Connecticut, 1; *United States* v. *Freel,* 92 Fed. Rep. 299; *S. C.,* aff'd 186 U. S. 309; *United States* v. *Howell,* Fed. Cas. No. 15,405; *Lane* v. *Scott,* 57 Texas, 367; *United States* v. *De Visser,* 10 Fed. Rep. 642; *Whitcher* v. *Hall,* 5 B. & C. 269; *Samuel* v. *Howarth,* 3 Merivale, 272; *Todd* v. *School Dist.,* 40 Michigan, 294; *Judah* v. *Zimmerman,* 22 Indiana, 388; *Barber* v. *Burrows,* 51 California, 404; *Fidelity Dep. Co.* v. *United States,* 137 Fed. Rep. 866.

It is the alteration of the contract, not the increase of

risk, that discharges the surety. *Victor Co.* v. *Scheffler*, 61 California, 532.

The special language in *United States* v. *Gleason*, 175 U. S. 588, 603, distinguishes it from this case; see *Davis* v. *La Crosse Assn.*, 99 N W. Rep. 351; *Curry* v. *Olmstead*, 59 Atl. Rep. 392; *Stubbings* v. *World's Col. Exp. Co.*, 110 Ill. App. 210; *Phœnix Bridge Co.* v. *United States*, 38 Ct. Cl. 492.

The courts construe very strictly language claimed to be a consent in advance by the sureties to changes in the contract. Brandt on Suretyship, 3d ed., § 423; *Miller* v. *Spain*, 41 Oh. St. 376; *United States* v. *Freel*, 186 U. S. 309; *Plunket* v. *Davis Sewing Machine Co.*, 36 Atl. Rep. 115; *Lodge* v. *Kennedy*, 73 N. W. Rep. 523.

In the cases relied on by appellant there was a distinct provision that the owner should have power to alter the plans and specifications, and that such alterations should not in any manner invalidate the contract. In none of the cases was there a provision, as there is in this case, that the changes should be made in writing and signed by the parties, where the sureties are such parties: such were the cases of *Chester* v. *Leonard*, 68 Connecticut, 495; *Wehr* v. *St. Matthews Cong.*, 47 Maryland, 177; *U. S. F. & G. Co.* v. *United States*, 191 U. S. 416; *Am. Sur. Co.* v. *San. Ant. Loan & Tr. Co.*, 98 S. W. Rep. 387; *Reissaus* v. *White*, 106 S. W. Rep. 607; *Hayden* v. *Cook*, 34 Nebraska, 670; 52 N. W. Rep. 165.

The United States, in so far as it contracts with private individuals, is subject to the same laws, and its contracts are to be construed as though made by private individuals. *United States* v. *Boswick*, 94 U. S. 66; *Adle* v. *Metoyer*, 1 La. Ann. 254.

The change of the time of performance amounted to a new contract on that point.

While part of the contract was yet to be performed, the parties by mutual agreement changed one of its terms

and substituted a new term on that point.   See cases
*supra.*

The original contract does not provide for extensions
of time.

It is only where the original contract provides that
one of the parties *shall*, not *may*, in certain cases make a
change, or provides that no change made shall invalidate
the contract, is the surety bound when the change is made.
Such are the cases of *Pascault* v. *Cochran,* 34 Fed. Rep.
358; *St. Louis Brewing Co.* v. *Hayes,* 71 Fed. Rep. 110;
*Glass Co.* v. *Matthews,* 89 Fed. Rep. 828; *Mattingly* v.
*Riley,* 49 S. W. Rep. 799; *Stevens* v. *Pendleton,* 83 Michigan,
342; *N. Y. Life Ins. Co.* v. *Loomis,* 100 Wisconsin, 17; *Stein*
v. *Jones,* 18 Ill. App. 543; *Western Bldg. Co.* v. *Fitzmaurice,*
7 Mo. App. 283; *Standard Co.* v. *Stone,* 35 N. Y. App. Div.
62; *People's Lumber Co.* v. *Gilliard,* 136 California, 55.

In every case on which the court below relied the con-
tract contains a provision by which contractor binds him-
self to make change if desired.   See *Village* v. *Leonard,* 68
Connecticut, 495; 37 Atl. Rep. 397; *De Mattos* v. *Jordan,*
15 Washington, 378; 46 Pac. Rep. 402; *Northern Light
Lodge* v. *Kennedy,* 73 N. W. Rep. 524; *Beers* v. *Wolf,* 116
Missouri, 179; 22 S. W. Rep. 620; *Hayden* v. *Cook,* 34 Ne-
braska, 670; 52 N. W. Rep. 165.

The contract in the case at bar did not contemplate
supplementary agreements extending the time for per-
formance, within the meaning of the rule in these cases,
nor within the meaning of any rule counsel has found.

The liability of a surety is never to be extended by
implication.   *Reese* v. *United States,* 9 Wall. 14.

If the contract is construed so as to provide for changes
as to time and other points, such changes could only be
made by agreement signed by sureties.   *Beers* v. *Wolf,*
22 S. W. Rep. 620, *supra; Lodge* v. *Kennedy,* 73 N. W. Rep.
524; *Eldridge* v. *Fahr,* 59 Mo. App. 44; *Killoren* v. *Meehan,*
55 Mo. App. 427, and other cases *supra.*

The contract was changed by the action of the Government in agreeing that no materials should be deposited on shore.

Very slight changes in the requirements of contracts have been held to release the sureties. *United States* v. *Corwinne*, Fed. Cas. No. 14,871; *United States* v. *Tillotson*, Fed. Cas. No. 16,524; *United States* v. *Case*, Fed. Cas. No. 14,743; *Zeigler* v. *Hallahan*, 131 Fed. Rep. 205. *Cambridge Sav. Bk.* v. *Hyde*, 131 Massachusetts, 77, does not apply.

Whenever it becomes the right of the owner to complete at expense of contractor it is not necessary that the strict letter of the contract be followed. In those cases, however, the work to be done was a certain specific construction and the changes were in details of the materials or methods to be used in the construction, and it was shown that the construction was actually substantially completed as contracted for. Where that is not the case, the surety is discharged; see *Chesapeake Transit Co.* v. *Walker & Son*, 158 Fed. Rep. 850; *United States* v. *Corwinne*, Fed. Cas. No. 14,871.

The United States, having annulled the contract without reservation of right to complete the work and charge the cost of completion to contract, such cost cannot be recovered as moneys expended.

When a contract proper and specifications attached thereto are in conflict, the contract proper, or signed portion of the whole, governs. *Meyer* v. *Berlandi* (Minn., 1893), 53 Minnesota, 59; *Palladino* v. *New York*, 10 N. Y. Supp. 66; *Demarest* v. *Haide*, 52 N. Y. Sup. Ct. 398.

Viewing the action as one for damages for breach of contract, the United States has failed to show amount of damages. 13 Cyc. 162, 192; 8 Am. & Eng. Encyc. of Law, 556. See also *Insley* v. *Shepard*, 31 Fed. Rep. 869; *Goldboro* v. *Moffitt*, 49 Fed. Rep. 273, reversed, 52 Fed. Rep. 560; *Stillwell &c. Co.* v. *Phelps*, 130 U. S. 520; *Von*

*Dorn* v. *Mengedoht,* 59 N. W. Rep. 800; *Savage* v. *Glenn,* 10 Oregon, 440; *Anderson* v. *Nordstrum,* 61 N. W. Rep. 1132.

The rule is not the difference between contract cost and the actual cost; but the difference between contract cost and the reasonable cost or necessary cost. This distinction is pointed out in *State* v. *Ingram,* 27 No. Car. (5 Ired.) 441; *Cincinnati Ry. Co.* v. *Carthage,* 35 Oh. St. 631; *Fletcher* v. *Milburn Mfg. Co.,* 35 Mo. App. 321.

It has not been shown here whether or not the United States ever completed this work of construction. *Chesapeake Transit Co.* v. *Walker & Son,* 158 Fed. Rep. 850.

It cannot be said that because the accepted bid was the lowest obtainable by the advertisement made that it was reasonable for the completion of the work under the original contract; for it was not a bid to do the same or substantially the same work. *Goldsboro* v. *Moffitt,* 49 Fed. Rep. 213; *New York* v. *Second Ave. Ry. Co.,* 55 Am. Rep. 839; *Kidd* v. *McCormick,* 83 N. Y. 391; *Brown* v. *United States,* 152 Fed. Rep. 964.

The contract with the New York Dredging Company was unenforcible against it for uncertainty and want of mutuality. 7 Am. & Eng. Encyc. of Law, 116; 9 Cyc. 248; *Pulliam* v. *Schimpf,* 19 So. Rep. 428; *Davie* v. *Lumberman's Min. Co.,* 53 N. W. Rep. 625.

The United States is seeking to enforce a unilateral contract in which it is the promisee. One party to the contract cannot be liable in damages when the other is not. 7 A. & E. Encyc. of Law, 114; 9 Cyc. 327; *Dorsey* v. *Packard,* 12 How. 126.

An agreement is not binding on either party unless both are bound. In the case at bar the United States was not bound to anything whatever. *Morrow* v. *Southern Express Co.,* 28 So. Rep. 998; *Jordan* v. *Indianapolis Water Co.,* 61 N. E. Rep. 12; *Vogel* v. *Pekoc,* 42 N. E. Rep. 386; *Crane* v. *Crane & Co.,* 105 Fed. Rep. 869.

There was no means whereby the burden on the

Dredging Company could be ascertained at all, the quantity of dredging being left absolutely to be determined by United States. *Harvester King Co.* v. *Mitchell Co.*, 89 Fed. Rep. 173; *American Cotton Oil Co.* v. *Kirk*, 68 Fed. Rep. 791; *Dennie* v. *Slyfield*, 117 Fed. Rep. 474.

The case at bar is easily distinguishable from cases cited in *Crane* v. *Crane*, 105 Fed. Rep. 869, where agreements to furnish such supplies as may be needed during a certain period for business or manufacture have been upheld.

In the case at bar the United States could vary the amount of work to be done to any extent, could vary the location of area to be dredged to any extent, and in fact, as is shown, decided to have performed only 149,000 cubic yards instead of one million, and claims that the contract is performed. *Cold Blast Transp. Co.* v. *Kansas &c. Co.*, 114 Fed. Rep. 81.

The contract was void for uncertainty and want of mutuality.

The rule that where a contract on its face assumes to provide for all the work authorized by an appropriation, the contractor is bound to know the amount of the appropriation, *Shipman* v. *United States*, 18 Ct. Cl. 146, does not apply to this case.

It would be unconscionable to hold that United States could advertise for bids for a certain work of dredging approximately one million cubic yards, so as to form a deep water basin, thirty feet deep, on a marked area; accept a bid based on that amount of work; and then hold the contractor to a contract for dredging a very much smaller quantity at the same rate because the appropriation was not sufficient to pay for the work as originally planned, for which bid was submitted.

Plaintiff in error cannot now be heard on the question of the claim for liquidated damages urged in the Circuit Court, such claim having been disallowed by that court.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a suit upon a contract for dredging and a bond made part of the contract, both executed by the New York Dredging Company as principal and by the defendants in error as sureties. The plaintiff got judgment in the Circuit Court, but in the Circuit Court of Appeals the judgment was reversed on the ground that the time for performance had been extended, and was ordered to be entered for the defendants. 167 Fed. Rep. 460. 93 C. C. A. 96. The contract provided that if, during the progress of the work, any changes in the plans or specifications should be deemed desirable by the Government, the changes in compensation should be ascertained in stated ways. The work was to begin within thirty days from the date of the contract, October 25, 1897, and to be completed in sixteen calendar months from the same date. In case of unavoidable delays, through accident, storm, or other act of Providence, the contractor was to notify the officer in charge of the occurrence &c., to provide for an investigation. In case of avoidable delays no extension of time would be recommended except on condition that the contractor bear specified costs and other expenses, to be deducted from the money coming due to it under the contract. No extension of time was to be granted except upon the authority of the Secretary of the Navy. In case of delay beyond the period fixed by the contract deductions of fifty dollars per day might be made in the discretion of the Secretary of the Navy as liquidated damages. In case of the contractor's failure in any respect to perform the contract the United States reserved the option to declare it void without prejudice to its right 'to recover for defaults herein or violations hereof,' and might recover as liquidated damages a sum equal to the penalty of the bond ($30,000).

The contractor began its preparations on the spot on

November 26, 1897, and began actual dredging in the fol-
lowing March. It was bound to finish by February 25,
1899. In January, 1899, it asked for an extension of time
on account of storms, accidents, unforeseen hardness of ma-
terial and other difficulties. On February 15 the time was
extended by the Secretary of the Navy to December 30,
1899. But in about two months the contractor stopped
work and asked leave to dump in deep water instead of on
shore. This was refused. There were another application
and refusal and further correspondence, and finally leave
was granted on February 21, 1900. The contractor, how-
ever, did no more work after April, 1899. On May 25,
1901, the Navy Department declared the contract void,
and a new contract was made, after advertisement in the
required way, by which a third party was employed to
complete the work at the lowest rate that the Government
could get by such a bid. The damages allowed in the Cir-
cuit Court were the difference in cost between the old
contract and the new; viz. $25,588.02 with interest, or
$33,389.52 in all.

The defence is rested mainly on the extension of time,
it not appearing that the sureties assented to the change
otherwise than by the contract, which, it is said, merely
recognizes what was true without it, that the contractor
might ask for more time and the Government grant it if so
minded. It is argued that the expression of the obvious
does not alter the general rule of law. But the question is
not what was possible but what was contemplated as not
improbable, and we are of opinion that the sureties were
not discharged. There is no sacrosanct prohibition of
change as against them; the law has no objection to it if
they assent. Whether they have done so or not is simply
a question of construction and good sense, taking words
and circumstances into account. If we should assume in
their favor that in this case there could be no change with-
out mutual agreement, still in our opinion this contract so

definitely contemplated what the nature of the work made manifest, that it might be necessary or very convenient to extend the time; that the sureties must be taken to have contemplated it also as permissible against themselves. In *United States* v. *Freel,* 186 U. S. 309, 317, it was recognized that a clause similar to the one to which we have referred concerning the case of the United States deeming changes desirable would authorize some changes of plan without discharging the sureties. It is true that that contract contained a proviso that no change of the kind should affect the validity of the contract, which of course it would not in any event if the contractor agreed to it. But the sureties, so far as appears, signed the bond only and were sued upon that. The proviso did not affect their case. See also *Guaranty Co.* v. *Pressed Brick Co..* 191 U. S. 416, 424.

It is urged that the last mentioned section dealing with changes deemed desirable by the Government requires that they, as well as the increased or diminished compensation, must be agreed to in writing by the parties to the contract before they are begun; and it is suggested that this requires the consent of the sureties. We do not read it so. We think that so far as this clause goes it contemplates an imperative right on the part of the Government to make a change, but requires a writing as a condition of going on. See Rev. Stat., § 3744. The same notion is repeated in the specifications with even more definite assumption that the Government may make changes if its sees fit. "Should it be to the interest of the Government to make any changes in the plans . . . the . . . compensation is to be determined" &c. So again the Government reserves an unqualified right to change the limits of the dredging and the points of deposit. Moreover, comparing the clause with the specifications, which more or less repeat the provisions, as we have said, and deal with the contractor *eo nomine,* we should be inclined to construe

the word parties as meaning the contractor and the United States. But we do not delay upon this, as the case must be decided on the provisions dealing expressly with extension of time, and we have referred to the other clauses simply to show that in other particulars, as well as time, the sureties were going into an undertaking which was subject to contingencies of several sorts. It was limited by the appropriations available. It might be modified in plan. The limits of dredging might be changed. Necessity cr convenience might require an extension of time.

We should be inclined to suppose that the extension was allowed as an unavoidable delay. But if it was allowed as an avoidable one, it does not appear that the Government did not enforce the condition as to the costs to be borne by the contractor, and if it took no steps to collect them the sureties were not concerned. The contract was not altered, and insistance by the United States would have done them no good.

The construction that we adopt is fortified by the provision for deductions of $50 per day for delay beyond the period fixed for the end of the work. For even though this fell only on the contractor it created a necessity for extension in possible cases, to which the sureties must be deemed to have assented rather than expose their principal to such a risk. Manifestly if the construction now contended for by them had been written in it would have created a strong motive against relaxations that would have let them off. We deem what we had said sufficient to justify our conclusions without considering the argument of the Solicitor General that the contractor was given a right to the extension of time if the Secretary of the Navy decided for it, and that the Secretary of the Navy is to be regarded as a third party and stranger to the contract rather than as representing the United States. See *United States* v. *Gleason*, 175 U. S. 588. Of course if the Secre-

tary be so regarded the contractor's right is made out, as the extension would be independent of the will of the other party to the contract, the United States.

The next argument that seems to us to need a word is on the effect of the election of the United States to annul the contract, as it was said. The infelicity of the word annul has been adverted to and its meaning explained heretofore. If notice had been given before the final breach and abandonment, it would have meant simply that the United States would proceed no further with the contractor under the contract, not that it rescinded or avoided it. *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Howard,* 13 How. 307, 340. *United States* v. *O'Brien,* 220 U. S. 321, 328. At the time when the notice was given it was merely a ceremony to mark the point of default as a preliminary to employing some one else. The obligations of the contract, so far as applicable to a case of default, remained in full force. The United States had a right to get some one else to complete the work and to charge the defendants with the reasonable difference in cost. Indeed this right was expressly stipulated in the specifications, if during the progress of the work a board should recommend that the contract be 'annulled' on the ground that it would not be completed in time. The cost to the United States was the least for which it could get the work done under the conditions upon which the Government was bound to contract, and must be assumed to have been reasonable in the absence of any evidence to the contrary. *New York* v. *Second Avenue R. R. Co.,* 102 N. Y. 572. *Baer* v. *Sleicher,* 153 Fed. Rep. 129. 82 C. C. A. 281. It was less than the sum stipulated as liquidated damages. *Sun Printing & Publishing Association* v. *Moore,* 183 U. S. 642. *United States* v. *Bethlehem Steel Co.,* 205 U. S. 105, 119.

The objection that the second contractor does not appear to have completed the work intended to be accomplished

by the first, that is to have made a channel of a certain
depth, does not impress us. The first contract was for cer-
tain work for a certain object, but limited and subject to
change as the appropriations might require. The second
was for the same on the same plans and specifications, the
only difference being in the parties, the price, and the lib-
erty given to the second contractor to dump in deep water,
which diminished the cost. In the first contract the Gov-
ernment reserved an absolute right of choice in this regard.
Whether the object of the contract was attained is im-
material, so long as the work done towards it was work
that the first contractor had agreed to perform.

As little need be said in answer to the argument that
there was no enforcible contract for want of certainty and
mutuality. The power to change details reserved by the
United States did not make the contract any the worse,
and there were full provisions for ascertaining a change in
compensation where any such change was proper. There
was nothing warranting an enlargement of the plan beyond
the channel of Beaufort River, or the purpose indicated.
The contract estimated the amount of material to be re-
moved, and as there were different prices per yard for
earth and rock, this amount was expressly made subject
to the appropriations, as without expression would have
been implied. See Rev. Stat., § 3733. There was some
suggestion at the bar that the contract was not signed by
the United States. The answer does not deny it, but by
implication admits it. The contract says that it is made
by the United States by E. O. Matthews, Chief of the
Bureau of Yards and Docks, and it is signed by E. O.
Matthews, Chief of the Bureau of Yards and Docks, which
is enough. The matter does not seem to us to need dis-
cussion at greater length.

> *Judgment of Circuit Court of Appeals reversed.*
> *Judgment of Circuit Court affirmed.*