### THE ROSALIE MAHONEY.

(District Court, S. D. New York. February 11, 1924.)

1. **Admiralty ⬤⟫73, 75—Evidence in support of claim for repairs; answers to interrogatories held not to be taken as evidence.**

In a suit to recover for repairs to a vessel, where the records of the repairer did not allocate the labor and materials expended between the different items of repairs, and libelant stated that it was unable to do so, and in answers to interrogatories propounded by claimant merely attempted an approximation, such answers are not to be taken as evidence, and claimant may not hold libelant to proof to correspond with the allocation so made, nor is it a defense to show that materials so allocated to one item could not have been used on that item, unless it is also shown that they could not have been used on any other.

⬤⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. **Evidence** ⊜⇒474½—**Opinion evidence competent as to labor more than reasonably necessary in making repairs.**

That the labor used in making repairs and charged for was more than reasonably necessary may be shown by the opinions of witnesses qualified to judge.

3. **Maritime liens** ⊜⇒65—**Labor shown to have been actually employed in making repairs presumed reasonably necessary.**

Prima facie proof of the labor actually employed in making repairs carries with it the presumption that it was reasonably necessary.

4. **Maritime liens** ⊜⇒65—**Claim for repairs held sustained by evidence.**

Where libelant was employed without contract to repair a vessel at a time when wages were high, work abundant, and union rules prohibiting workmen of one class from doing any work of another class were rigidly enforced, and the owner made it an imperative requirement that the work be completed by a certain date, which necessitated night work at double time and made more or less waiting by one class of workmen for completion of the work of another class unavoidable, the owner cannot avoid liability for the labor actually employed and paid for in good faith by showing that under normal conditions the charge would have been extravagant and unreasonable.

In Admiralty. Suit against the steamer Rosalie Mahoney to recover for repairs. Decree for libelant.

Patrick J. Dobson, of New York City, for libelant.
Edwin Serre Murphy, of New York City, for claimant.

LEARNED HAND, District Judge. This controversy, which involves less than $8,000, since the claimant concedes owing nearly $5,900, has already probably cost more than that amount in the costs of litigation. The suit was started over four years ago and over 1,000 pages of testimony have been taken. It is a memorial to the difficulty of disposing of such a dispute in a court of law, and of the wisdom at the outset of reaching some accommodation by negotiation. I am sorry that I have myself contributed so much to the delay and that in the end I cannot reach a more certain conclusion.

[1] The libel was for labor and materials done upon repairs to the steamer Rosalie Mahoney between November 28 and December 4, 1918, and was filed January 6, 1920, 13 months after the work was done. The claimant answered on May 5th, adding to the answer 19 interrogatories. The answers to these, filed on June 25th, did not prove satisfactory, and upon order of the court the libelant filed a second set of answers on August 19th. It was here that the first confusion arose.

At that time, as subsequently appeared, there was a strike in the libelant's yard, and most of those who knew anything about the work done during the six days in question were not at hand. One Rogers, the libelant's assistant secretary, drew up the second set of answers and tried to allocate the materials and labor among the various items of repairs, some 26 or more in all. It is doubtful whether any better result could have been reached by any one else or at any other time, because the records had not attempted to segregate the items of labor or materials upon the separate items of repairs, and the libelant had already told the claimant that it was impossible to do so. In any event,

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rogers' allocation was a mere guess, and turned out to be entirely worthless in application, as might have been foreseen.

After the libelant had taken its preliminary proofs by deposition, the cause came on for hearing, and, as some liability was admitted, Judge Mack, ordered it to a reference to compute the amount due. The libelant put in its depositions, so making a prima facie case for the work done and materials used on the vessel, which the claimant does not now dispute; that is to say, he does not deny that the labor claimed to have been put upon her was in fact paid for by the libelant, that the rates of wages paid were reasonable, that the materials claimed were used, or that their prices as charged were reasonable. Neither does he dispute that the labor and materials which the libelant so paid for were in fact used in the repairs, if by that one includes the time of workmen who were kept waiting till they could work on the job. His position is that the libelant has not shown that all the labor and materials actually used were reasonably necessary, but that, on the contrary, the repairs could have been done with a small part of the labor. that the rest was needless and wasteful, and that he ought not to be charged for it. This was the only point argued on the exceptions to the commissioner's report.

It was after the second set of answers had been filed that the libelant took its depositions. It then made no effort to allocate the labor or materials between the items of repairs, but made its case simply by showing that the workmen had been properly supervised and had put in the time and used the materials stated in the time sheets and later in the bill rendered. In short, it proved the bill item by item. Rogers was called and declared that his set of answers was only approximate, and it was proved that the libelant had written before suit that no allocation was possible. Thus the claimant approached the hearing with complete information that it could not rely upon the answers. When the hearing opened before the commissioner, the claimant's advocate said that he would make his defense upon the basis of the answers. He was met at once with the reply that these were not to be taken as reliable. Nevertheless, he persisted in the face of this warning, and his whole defense was built up by taking the answers one by one and showing that the labor and materials allocated to each would not have been used upon it by a competent shipwright.

While such answers are in form like true answers to interrogatories, they are in substance only particulars of the libelant's claim, and constitute mere details of the pleading; they are not evidence at all. As such they are, of course, intended to advise the other party of the pleader's position, and justice requires that they should not mislead him to his prejudice. However, there are no rules of variance in the admiralty, and pleadings, however amplified, are (what they ought to be in every court) no more than statements of claim to show the other party what he has to meet. When the claimant learned that he could not take the answers as accurate, when the proof was made without any regard to its allocation among the items of repair, if he was prejudiced, he should have gone to the court for relief. He had no right obstinately to insist upon holding the libelant to particulars which he knew

meant nothing. If he chose to base his case upon them, he has only himself to blame that his proof does not answer the libelant's.

[2] As respects materials, that proof certainly does not do so. It was no answer to show that some of the materials charged to one item could not have been there used. The claimant must show that it could not have been used on any other item, and this he did not try to do. The total difference between the amount conceded for materials and the amount claimed is only $217.09, and it is quite obvious that it might have been made up in this way. The question of materials may therefore be laid aside at the outset. In respect of labor the same reasoning does not apply, because, if the labor charges were too high on all items of repairs, it cannot be that any surplus charged to one could properly be allocated to another. That might, perhaps, be theoretically possible, since the labor was not all of a kind; the charges might be too high on each item merely because the several kinds of labor had been improperly allocated. But that is a very remote possibility, and to show it would probably be impossible. At any rate I shall assume that the claimant's proof showed the labor used to have been higher than was reasonably necessary. This proof was necessarily based upon the opinion of witnesses; no other kind of proof was possible, and it is improper to ignore it because it was speculative. Southern Shipyard Corp. v. The Summitt, 294 Fed. 284 (C. C. A. 4th Cir., Nov. 15, 1923).

[3] An owner who engages a shipwright upon repairs without contract is undoubtedly in a hard position, if he would dispute the necessity of the labor which was actually used. Prima facie proof of their actual employment upon the job carries with it a presumption that the charges were reasonable, Mayor of N. Y. v. Second Ave. R. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. Rep. 839. In U. S. v. McMullen, 222 U. S. 471, 32 Sup. Ct. 128, 56 L. Ed. 269, and Pennsylvania Steel Co. v. N. Y. City Ry. Co. (C. C.) 191 Fed. 222, the same rule was applied to the cost of work done by contract with a third person, when let on bids. Whether the bids constituted the protection to the promisor does not definitely appear. It is indeed a check. Yet this presumption may be in fact false, and the promisor cannot ordinarily prove it in any other way than by the opinions of competent persons. That this may be enough is shown by The Summitt, supra, if any authority were necessary for so evident a proposition.

[4] In the case at bar the proof is much complicated by the fact that the job was done under the most extravagant conditions, and was so ordered by the claimant. The libelant was told to put the Mahoney in commission by December 5th, without regard to cost. This meant work by night as well as day, and for substantially two-thirds of each period of twenty-four hours this work must be paid for at double time. Even so the estimates of the claimant vary widely from the labor actually used on the ship. The total of hours charged comes to about 12,300. If we assume that the work was pushed forward day and night, the actual hours consumed must be reduced to three-fifths of this, or about 7,400 hours. In his estimates the claimant allows only about 2,650 hours' straight time, so that, if his witnesses are right, the libelant got very little more work out of three men than one should have

done. While it would perhaps be difficult to account for so great a discrepancy upon the assumption both that the estimates were right and the work was done as cheaply as possible, there are nevertheless several considerations which make the difference less glaring.

The repairs were made in so much hurry and under such pressure that it was not possible nicely to adjust the men's time, so as to avoid much idle waiting. A gross instance of this was the crew of painters kept waiting a whole night through because the earlier repairs had not been completed as soon as had been expected. The libelant is not chargeable with such losses. If the repairs were to be completed on the day set, it could take no chances of delays in assembling one crew which was to follow another. That time should be lost was inevitable; the claimant had invited such losses by his directions. Again, it is in evidence that, especially at that time, when wages were high and work was plentiful, the unions enforced their jurisdictional regulations with the utmost rigidity. No workman of one class was allowed to do the least particle of work properly apportioned to another; he must stop and let the other step in to do it. This tended to lose time, requiring a coppersmith, for example, to stand by while a carpenter was at work, though his share in the repairs might take a small fraction of the time for which the libelant must pay him.

It seems to me that these considerations take some of their value from the opinions of the claimant's witnesses. They testified to the number of hours which the repairs would have required under normal circumstances, making allowance for overtime in three or four instances. One of them, Renzland, only knew conditions in a nonunion shipyard, where he was not troubled by questions of jurisdiction or division of the work. Assuming that their estimates were quite correct, they were inapplicable, and not a just basis for concluding what hours might have been necessary in fact.

However, as I have suggested, it is impossible to reconcile the wide variations between the parties by the reasons that I have given. The time consumed cannot have been in the ratio of nearly three to one to the time properly taken, merely because the work was done in such a hurry. The case presents a conflict in the evidence; on the one hand, is the fact that the libelant employed these men on the work and paid them for time spent; on the other, is the opinion of the claimant's witnesses that they could have got on with less than half the time consumed.

The claimant's case must presuppose one of two things, either that the men could have been kept to a higher efficiency, or that they were employed in too great numbers and without regard to their proper distribution. The first can be ignored. It is safe to say that at the period in question, just at the close of the war, it was impossible to push workmen more than they chose to work. Wages were high, work plenty, and the union rule strong. Whether or not their standard was too low, the libelant was not in a position to do much by way of "speeding up."

The final issue is whether the libelant used no care in economizing labor, but wantonly doubled the crews, or kept them waiting needlessly, when they could have been employed elsewhere. The claimant argues

that there is no evidence on this issue, except the estimates of its own witnesses, and that, as the libelant has the burden of proof, it must fail. This does too little justice to the force of the libelant's case. The situation was not one where the libelant had no other work on which it could have employed its shipyard. Quite the contrary, it had not sought this job, but had actually made room for the Mahoney, which was pressing for a berth. It had therefore not the motive to pad its time-sheets, so that its men could be employed. Indeed, in some cases men were actually hired for this job. Of course, all things are possible, and one cannot absolutely deny that the libelant went at the work dishonestly, intending to make up as great a bill as possible. But that is to impute bad faith, and the commissioner has found that the libelant acted honestly.

Aside from bad faith, the very employment of the men was an opinion that they could be economically used, or at least that it was not safe to dispense with them, considering the imperative demand for speed. The persons in charge of the libelant's yards were equally experienced as the claimant's witnesses and as little biased, except the few who were called from outside. They had much better means of judging what was necessary under the circumstances, because they were there and knew the conditions they had to meet. The very employment of the men was evidence that they were thought necessary, and the case is really one of opinion against opinion.

I must own that, when all is said, I cannot reach any certain conclusion. In such cases the issue is in its nature one which turns upon opinion as to complicated and fugitive circumstances about which men will honestly differ. The libelant has an inevitable advantage in having done the work and paid out the money. It is a possibility that, in the search for the very high profit which it got it was extravagant and wasteful; but the proof does not seem to me sufficient so to conclude. Besides, the commissioner's report must count for something. He had the advantage of seeing all the claimant's witnesses and many of the libelant's. He lived with, and I may add through, the case, and it was his conclusion that the opinions of the claimant ought not to overturn the actual decision of the libelant made on the spot. It is quite true that he appears to have assumed that the chief issue was whether the work was actually put into the repairs, which was, for all I know, argued while the case was before him. However, he does say on page 20 that the claimant tried to show:

"That certain material should not or could not have been used, and that the class of labor claimed to have been employed should not or could not have been employed."

Again he says that:

"The record is full of theories advanced by both parties as to what was necessary and why in the repair of a given item."

He dismissed the opinion proof as speculative, not, I think, because he refused to consider it at all, but because it seemed to him of less weight than the evidence that the libelant at the time thought the work necessary. He ought not to be reversed for so doing.

So far as I can conclude upon this tangled matter, it is that the conditions under which the work were done were so extraordinary that the claimant necessarily laid himself open to charges which would under ordinary circumstances have been extravagant even to the point of absurdity. But that much he assumed when he wanted the work done in so short a time and at just that time. This he did for motives which then seemed good, but which later turned out to be delusive. He lost his charter, and the charge then seemed to him preposterous. That is no proof that it was, given the conditions. I see no escape from upholding the report.

Exceptions overruled; report confirmed; decree for amount found, with interest and costs.