### UNITED STATES v. CONTI.

No. 6985.

District Court, D. Massachusetts.

Jan. 24, 1946.

188

Edmund J. Brandon, U. S. Atty., and Gerald J. McCarthy, Asst. U. S. Atty., both of Boston, Mass., for plaintiff.

Harry Bergson, Philip Bergson, and Alfred T. Scigliano, all of Boston, Mass., for defendant.

WYZANSKI, District Judge.

### Introductory.

This case is back in the District Court for a new trial, pursuant to an opinion reported under the style of United States v. Conti, 1 Cir., 119 F.2d 652. There are no substantial questions of fact, the principal evidence consisting of documents of the type which the Circuit Court of Appeals has already held admissible. See 119 F.2d 652, 656. And, following numerous concessions made by reasonable counsel in the trial before me, the case now comes down to a single issue of law: Did the United States take the steps that were· requisite under Article 9 of Government Form No. PWA 51 to charge defendant (as a defaulting contractor) with the costs incurred by the United States in having the work covered by the contract performed by ·a second contractor to whom the United States re-let the work.

### Findings of Fact.

Fdg. 1. In 1933 Rear Admiral H. G. Hamlet, U. S. Coast Guard Commandant, had authority from the Treasury Department, of which the Coast Guard was then a part, to extend invitations, to receive bids and to accept bids for projects of the Coskata Station type [R. 16, 30].

Fdg. 2. October 10, 1933, Rear Admiral Hamlet, on behalf of the Coast Guard, invited sealed bids to furnish all labor and materials for the construction of a two-story frame dwelling at the Coskata Coast Guard Station, Nantucket, Masschusetts. The invitation incorporated by reference Article 9 of Government Form No. PWA 51. Article 9 of that form provided that:

"If the contractor refuses or fails to prosecute the work * * * with such diligence as will insure its completion * * * within the time specified * * * or fails to complete said work within such time, the Government, may, by written notice to the contractor, terminate his right to proceed with the work. * * * In such event the Government may take over the work and prosecute the same to completion, by contract or otherwise, and the contractor and his sureties shall be liable to the Government for any excess cost occasioned the Government thereby."

■ The invitation was sent by circular letter to thirty-seven dealers and was covered by notices posted in public places. [This last statement is based upon the certificate made by Rear Admiral Hamlet and forming part of the official records of the General Accounting Office. The certificate constitutes page 1 of Pl. Ex. 21 which was offered at the trial. The question of the admissibility of that particular page was reserved at the trial (R. 53). The Court now rules that the page is admitted, over objection. Act of June 20, 1936, 49 Stat. 1561, 28 U.S.C.A. § 695. See also R. 8.]

Fdg. 3. October 24, 1933, Arthur Conti submitted to Rear Admiral Hamlet a bid to do the work for $15,495, accompanied by a certified check of $200 as a deposit. The bid and deposit were both in compliance with the invitation.

Fdg. 4. About the same time Samuel Pasquale submitted a bid for $16,850 and Durso Construction Company submitted a bid for $17,839. [See Plaintiff's Admission of Facts.]

Fdg. 5. October 27, 1933, Rear Admiral Hamlet, acting for the Coast Guard, accepted Conti's bid [Pl. Ex. 20, R. 26].

Fdg. 6. November 1, 1933, or prior thereto, Conti or his counsel stated to the Coast Guard representative of Boston that he desired to withdraw his bid. [R. 3, 36.] But the Coast Guard declined under date of November 1, 1933, to allow the withdrawal. [Pl. Ex. 24, R. 33.]

Fdg. 7. On November 7, 1933, Conti received [R. 35 l. 3] upon the official United States Coast Guard form a telegram, the text of which follows:

"Coast Guard representative at Boston reports you refuse to proceed with work under contract for Coskata Coast Guard Station dwelling Period You are notified that such action will result in your being charged difference in cost between your bid and sum Government will be required to pay for having work performed Period Such action will cause you to forfeit your bid security and be chargeable with an excess over such security to liquidate damage Government might suffer through your action Period Request you inform this office directly by wire of your decision since you will also be chargeable with any delay in commencing of work by your action Period It is also requested that your decision by telegraph be confirmed immediately in writing over your signature."

There is no evidence as to who sent this telegram.

Fdg. 8. Conti admitted that he authorized his counsel to reply to that telegram [R. 37]. The Court has no direct evidence as to what he said. However, since it is admitted that Conti never undertook the work covered by the bid and acceptance [R. 7], the Court infers as ultimate facts that Conti's counsel stated that Conti would not perform the contract, and that the Coast Guard relied on that repudiation [Pl. Ex. 21, p. 1].

Fdg. 9. There is no evidence (except the self-serving hearsay recital in par. 2 of Pl.'s Ex. 26) that plaintiff took any further steps in November 1933 or at any time prior to October 15, 1934, to notify Conti that it had terminated or was terminating Conti's right to proceed with the work.

■ Fdg. 10. October 15, 1934, A. B. Thomas, Assistant Chief of Claims Division, wrote to Conti a letter which recites that there had been a default by Conti and that as a result of his default he was liable to the United States for $2,144. This letter is not a notice of termination.

Fdg. 11. November 2, 1933 (which was prior to the reply given by Conti's counsel to the telegram of November 7, see Fdg. 8), the Coast Guard office acting through Assistant Commandant L. G. Covell returned to Pasquale his bid and his deposit of $200. [Pl. Ex. 22, R. 32.]

Fdg. 12. After Conti refused to go ahead with the work "the contract was then offered to the second low bidder, Pasquale Construction Co., Inc., Jamaica Plain, but he replied that he was unable at this time to accept the award." [Page 1 of Pl. Ex. 21.]

Fdg. 13. Dec. 4, 1933, Rear Admiral Hamlet, acting for the Coast Guard, then accepted the third bid, the bid of $17,839 of the Durso Construction Company. [Pl. Ex. 21, R. 29.]

Fdg. 14. Durso Construction Company completed the contract. The United States paid Durso Construction Company the full amount of $17,839 by checks, the last of which was dated July 10, 1934. [This check was introduced in the last trial of this case as Pl. Ex. 4, and, by concession of counsel, may be referred to here.] [See also R. 29, 30.]

Fdg. 15. It is admitted that the United States cashed and kept the $200 check submitted by Conti with his bid. [Pl. Ex. 26.]

Fdg. 16. October 15, 1934, plaintiff demanded $2,144 from defendant. [Pl. Ex. 26.]

### Conclusions of Law.

Conc. 1. There was as of October 27, 1943, a valid contract between plaintiff and defendant under which defendant had agreed for $15,495 to construct the Coskata Station.

Conc. 2. Article 9 of Government Form No. PWA 51 was part of that contract.

Conc. 3. In the ordinary situation the Government if it desires to avail itself of rights such as those specified in Article 9 must as a condition precedent give the original contractor "written notice" that the Government has exercised its option to "terminate his right to proceed with the work."

Conc. 4. But the present case is not the usual one inasmuch as at the outset the contractor himself gave the Government unequivocal information that he would not perform the work. This flat refusal induced the Government not to give him written notice. In such a case the Government may insist on the original contractor's liability even though the Government has not given him written notice. "It is an old maxim of the law that it compels no man to do a useless act, and this principle was applied in the time of Coke, if not before, to the case of a conditional promise." Williston, Contracts, Rev.Ed. § 698A. A modern statement of the governing rule is to be found in these words in Restatement, Contracts, § 306: "Where failure of a party to a contract to perform a condition is induced by a manifestation to him by the other party that he * * * will not * * * perform his own promise * * * the duty of such other party becomes independent of performance of the condition." One example not too far from the present case is furnished by Royal Insurance Co. v. Martin, 192 U.S. 149, 162–163, 24 S.Ct. 247, 48 L.Ed. 385. It was there held that where an insurance company had contracted to pay an insurance loss only on condition that there was proof of loss, but after the loss the company stated it would not pay in any event, then the beneficiary was excused from complying with the condition of proof. Other examples, including cases where there has been a failure to give written notice, are cited in Williston, Contracts, Rev.Ed. § 698A.

Conc. 5. Under the circumstances of this case the Government was entitled without notice to Conti to re-let the work and charge him with the deficiency.

Conc. 6. In view of the fact that Pasquale made a timely withdrawal of his bid and the further fact that, among 37 invitees, Durso Construction Company was the next lowest bidder, the Coast Guard was entitled to re-let to Durso Construction Company and to use that re-letting as the measure of damages. The Durso contract "must be assumed to have been reasonable in the absence of any evidence to the contrary." United States v. McMullen, 222 U.S. 460, 471, 32 S.Ct. 128, 56 L.Ed. 269.

Conc. 7. Under Article 9 the measure of damages for defendant's failure to perform the contract was the difference between Conti's bid, $15,495, and the price the Government paid Durso Construction Company, $17,839, or $2,344. Against this sum of $2,344 defendant is entitled to a credit of $200, on account of the forfeited cash deposit [Pl. Ex. 26]. For the balance of $2,144 plaintiff made demand on October 15, 1934 [Pl. Ex. 26], and so interest at 6% began to run from that date. Royal Indemnity Co. v. United States, 313 U.S. 289, 296–297, 61 S.Ct. 995, 85 L.Ed. 1361. Compare Mass.G.L.(Ter.Ed.) c. 107, § 3, A. Doykos et al. v. Leventhal, 290 Mass. 375, 376, 195 N.E. 348; Childs v. Krey, 199 Mass. 352, 358, 85 N.E. 442.

Judgment for plaintiff for $2,144 with 6% interest since October 15, 1934, with costs.