GARRICK THEATRE COMPANY, Appellant, vs. GIMBEL BROTH-
ERS, Respondent.

*October 29—November 17, 1914.*

*Corporations: Officers: Vice-president: Apparent authority: Con-*
*tracts: Validity: Statute of frauds: Surrender of leasehold in-*
*terest: Preliminary agreement, when takes effect.*

1. When a private corporation allows its managing officer to so
   conduct himself in his dealings and transactions on behalf of
   the company as to lead the public or those dealing with him
   to reasonably believe he possesses certain powers, the company
   will not be allowed to question such apparent authority as
   against one relying in good faith on the same.
2. One of the vice-presidents of a large Pennsylvania corporation,
   who was its only officer in Wisconsin and had complete charge
   of a department store conducted by it in this state, and whose
   predecessor in such office had executed, on behalf of the cor-
   poration, leases of business property owned by it adjoining the
   store and intended to be used ultimately for enlargement of
   the business, and had afterwards executed the written consents
   to the subletting of such property, is *held* to have had implied
   or apparent authority to make a binding agreement on behalf
   of the corporation with respect to the surrender to it of such
   leases.
3. A statement by such vice-president, when a written offer was
   made to him with respect to the surrender of the leases, that
   he wished to send it East to place before one of the officers of
   the corporation before acceptance, might well be understood as
   simply a wish to obtain advice and was not notice to the les-
   sees that he had no authority to act in the matter, especially
   where, on receiving his reply from the East, he affirmatively
   claimed authority and assumed to close the contract.
4. A leasehold interest in lands for an unexpired term, not exceed-
   ing one year, may be surrendered by parol under the terms of
   sec. 2302, Stats.
5. An informal agreement, complete in its terms, will take effect
   if the parties so intend, though a more formal contract is ex-
   pected to be afterwards made, provided that the formal con-
   tract is not to contain material provisions not contained in or
   to be inferred from the preliminary informal agreement.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*
Action brought in the civil court of Milwaukee county to

recover $500 which the plaintiff alleges the defendant agreed to pay in consideration of the surrender of the last year of the term of certain leases of business property in the city of Milwaukee. The answer denied that any such contract had been made. The action was tried by the court without jury, and the facts found were: that the defendant is a Pennsylvania corporation with its principal office in Philadelphia, conducting a retail department store in Milwaukee adjoining the premises in question; that defendant has nine vice-presidents, of whom Oscar Greenwald is the junior; that said Greenwald has charge and entire management of the defendant's business in the state of Wisconsin and is the only officer of the corporation residing in this state; that he succeeded one Nathan Hamburger in that office and succeeded to the power and authority of said Hamburger as well; that during the years 1906 and 1907 the defendant, being the owner of the premises in question adjoining its retail store, leased the said premises by three several leases, each covering a part thereof, to the Thanhauser Company, all of said leases being in writing and expiring April 30, 1913; that the Thanhauser Company afterwards, with defendant's consent, sublet the premises to one Richard Kann, who, with like consent, sublet the same to the plaintiff; that said leases and consents to subletting were all executed in the name of *Gimbel Brothers* by Nathan Hamburger; that on March 11, 1912, one Landeck, plaintiff's managing officer, met Mr. Greenwald and submitted to him a written offer containing two propositions in the alternative looking towards the surrender to the defendant of the last year of the said leases and premises, the latter of the two alternatives being that defendant should pay to the plaintiff $500, the plaintiff to take care of any obligation or profit due the Thanhauser Company on account of its interest in the premises; that on receipt of the offer Greenwald told Landeck that he wished to send it to

one of the defendant's officers, Mr. Louis Gimbel, who re-
sided in the East, and would advise him (Landeck) in a few
days whether it was accepted; that Landeck ought to have
known from this that Greenwald had no authority to accept
either of the propositions; that nothing occurred between
March 11th and March 19th to warrant any belief on the part
of the plaintiff that Greenwald had received any power which
he did not have on March 11th; that on March 19th Green-
wald met Landeck and said to him, "I have heard from the
East and everything is O. K.   We will close the deal and
pay you $500;" that said proposition had not in fact been
accepted by defendant's Eastern officers and no written ac-
ceptance was exhibited by Greenwald to the plaintiff; that
Greenwald had no express authority to accept the proposition,
and no authority by virtue of his office as vice-president, nor
had he any actual or implied authority; that the plaintiff
caused papers to be drawn for the purpose of formally car-
rying out and closing the transaction, which papers were sent
to defendant's counsel in Milwaukee and some changes made
therein, after which they were sent by Greenwald to defend-
ant's officers in the East, Greenwald at the same time saying
to plaintiff's representative that he had authority to execute
them; that on April 30, 1912, the plaintiff vacated the prem-
ises and notified the defendant of the surrender both on its
own behalf and on behalf of the Thanhauser Company and
of Kann, and defendant refused to accept the surrender; that
about September 1, 1912, defendant began using a portion
of the premises for shipping purposes and subsequently oc-
cupied, and at the time of the trial continued to occupy, a
part thereof, claiming that the occupancy was for the purpose
of protecting the property.   Upon these facts the civil court
dismissed the complaint on the merits, and the plaintiff ap-
pealed to the circuit court, where the judgment was affirmed
on the record, and the plaintiff now appeals to this court.

For the appellant there was a brief by *Lewis M. Ogden,* attorney, and *Louis J. Brabant,* of counsel, and oral argument by *Mr. Ogden.*

For the respondent there was a brief by *Van Dyke, Shaw, Muskat & Van Dyke,* and oral argument by *Douglas Van Dyke.* As to the authority of the defendant's vice-president, they cited *Meating v. Tigerton L. Co.* 113 Wis. 379, 89 N. W. 152; *Hillyer v. Overman S. M. Co.* 6 Nev. 51; 4 Thompson, Corp. (2d ed.) § 4880; *U. S. F. & G. Co. v. Muir,* 115 Fed. 264; *Lovejoy v. McCarty,* 94 Wis. 341, 68 N. W. 1003; *Commercial H. Co. v. Brill,* 123 Wis. 638, 101 N. W. 1101.

WINSLOW, C. J.     There are three questions in this case, viz.: (1) Does the evidence show (contrary to the conclusion reached by the lower courts) that Greenwald had implied or apparent authority to enter into a binding agreement of surrender on behalf of the defendant?     (2) Could a valid surrender be made by parol? and (3) Was the parol arrangement for surrender made between Greenwald and Landeck intended to be a contract of itself or simply a step in the preliminary negotiations leading up to the real contract in writing?     These questions will be treated in their order.

1. It seems clear to us that the trial court took entirely too contracted a view of the powers of Greenwald, *i. e.* the powers which third persons dealing with him in good faith were entitled to assume that he possessed.     True, the vice-president of the ordinary domestic corporation is not generally endowed with large powers, either actually or ostensibly. Indeed, he is frequently a practical nonentity so far as the conduct of the business of the corporation is concerned.     The situation here, however, is different.     The defendant is a Pennsylvania corporation evidently of very large proportions.     The by-laws, which are in evidence, do not show the amount of the present capital stock, but do show that it is

expected to reach the sum of $10,000,000 and possibly more. There are nine vice-presidents, all of whom are authorized to perform any duties which the president may delegate or the board of directors may assign to them. This foreign corporation is conducting a mercantile business of considerable proportions in Milwaukee, which is admitted to be in complete charge of Mr. Greenwald as vice-president, who is the only officer of the corporation in this state. It seems very clear that Mr. Greenwald is no mere ornamental figurehead, whose name appears only in large type on the stationery of the company, but a real executive, who, so far as the business in Wisconsin is concerned, determines its conduct and is the visible embodiment of the corporation to all who deal with it. As to the Wisconsin business he occupies practically the same position to the business world as the active managing officer of a Wisconsin business corporation.

In these days, when so large and increasing a proportion of the business of the world is done through corporations, it cannot be endured that all persons dealing with one of these creatures of the law must at their peril first verify the exact extent of the powers of an officer who is held out to the world as a manager of its business. The principle must be, as held in *Ford v. Hill,* 92 Wis. 188, 66 N. W. 115, that "when a private corporation allows its managing officer to so conduct himself in his dealings and transactions on behalf of the company as to lead the public or those dealing with him to reasonably believe he possesses certain powers, the company will not be allowed to question such apparent authority as against one relying in good faith on the same." Mutual confidence is and must always be the corner-stone of successful business. Things must be what they seem to be. No one can be allowed to play fast and loose with the business world. No corporation can allow its officer to transact its business for years and then deny that it ever gave him authority to do so.

The doctrine of estoppel raises the conclusive presumption that the necessary power was duly given. *Bullen v. Milwaukee T. Co.* 109 Wis. 41, 85 N. W. 115.

In the present case it is clear that a vice-president had been for years the managing officer of the defendant's Wisconsin business with all the apparent authority which a managing president ordinarily has. To the Wisconsin business public he was in substance the corporation. The property in question was business property adjoining the defendant's place of business, and seems to have been intended to be used ultimately for purposes of enlargement of the business. It had been leased by three written leases executed on behalf of the corporation by Hamburger, and the written consents to the subletting of the premises afterwards given had been executed in the same way. It is affirmatively shown that Greenwald had the same powers which Hamburger had previously exercised. So when Landeck approached Greenwald he approached a man who to all apparent seeming was the manager of the business and who had been in the past endowed by the corporation with the power to make and consent to the transfer of leases of this very property.

It is true that the trial court found that Greenwald told Landeck, when the written offer was made, that he wished to send it East to place before one of defendant's officers before acceptance and that (as the court found) this was a notification to Landeck that Greenwald had no authority to act in the matter. In this connection it may be remarked that Greenwald did not state that he lacked the power, and that his desire to send the offer East might well be understood as simply a desire to obtain advice rather than power. However this may be, we do not regard it as in any sense conclusive. When he received his reply from the East he affirmatively claimed authority and assumed to close the contract. We cannot think that it was necessary for the plaintiff to demand that Greenwald produce a certified copy of the records

of the corporation or even a letter from the home office as proof of the fact. It seems hardly likely that his curiosity would have been gratified had he done so. The surrender of the leases was apparently a transaction along the same line and within the same general field as the original making of the leases and the consents to the making of the subleases. In all these transactions the resident vice-president had apparently acted for the company. It seems also that the property was not detached real estate, but was adjoining property, intended to be used at no distant day for the purpose of enlarging the accommodations for the mercantile business of which Greenwald was in sole charge. As we view the facts, Landeck was amply justified in concluding from the conduct of the business in the past that Greenwald had been endowed with authority to make the agreement for surrender of the leases, and hence that the agreement, unless void for some other reason, was valid.

2. The second question must be answered in the affirmative, under the logic of *Baumgarten v. Cohn,* 141 Wis. 315, 124 N. W. 288. It was held in that case that an oral lease of land for one year, to take effect in the future, was a valid lease. This holding was placed on the ground that sec. 2307, Stats., providing that every agreement which by its terms is not to be performed within one year shall be void, applies only to personalty, and that sec. 2304, Stats., affirmatively recognizes the validity of a parol lease of lands for one year or less, even if the year commence in the future. By parity of reasoning it must follow that a leasehold interest in lands for an unexpired term, not exceeding one year, may be surrendered by parol under the terms of sec. 2302, Stats., which reads as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands or in any manner relating thereto shall be created, granted, assigned, surrendered or declared unless by

act or operation of law or by deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same or by his lawful agent thereunto authorized by writing."

The same statute was so construed in New York. *Smith v. Devlin,* 23 N. Y. 363. This latter case affirmed *Allen v. Devlin,* 6 Bosw. 1, which was cited with approval in *Telford v. Frost,* 76 Wis. 172, 44 N. W. 835.

3. The question whether an informal arrangement is intended by the parties to form a contract in and of itself or as only a step in the negotiations leading up to a binding contract in writing is not always easy of solution.

The law undoubtedly is that an informal agreement complete in its terms will take effect if the parties so intend, though a more formal contract is expected to be afterwards made, provided that the formal contract is not to contain material provisions not contained in or to be inferred from the preliminary informal agreement. *Francis H. Leggett & Co. v. West Salem C. Co.* 155 Wis. 462, 144 N. W. 969; *Goldstine v. Tolman,* 157 Wis. 141, 147 N. W. 7.

In the present case the written releases and agreements which were subsequently prepared by Landeck and submitted to and approved by Greenwald are in the record. They do not seem to contain any material additions to the provisions contained in or reasonably to be inferred from the written offer of Landeck and the oral acceptance thereof by Greenwald. That offer and acceptance was in substance that plaintiff surrender or cause to be surrendered the said lease and premises on May 1, 1912, take care of any obligation or profit due the Thanhauser Company by reason of its interest in the premises, and that the defendant pay the plaintiff $500 for so doing. This is just what the written papers provide for in the ordinary way in which such stipulations would be provided for. The trial judge made no finding on the question whether the informal arrangement was intended to

constitute a complete contract, but he did find the facts substantially as testified to by Mr. Landeck, and it is entirely clear from Mr. Landeck's entire testimony that the contract was regarded by both parties as binding at the time when Mr. Greenwald accepted the written offer, and that the subsequent papers were intended simply to put in accurate and permanent shape the evidence of what had already been agreed on.

*By the Court.*—Judgment reversed, and action remanded with directions to reverse the judgment of the civil court and render judgment for the plaintiff according to the prayer of the complaint.