CUSICK, Appellant, vs. WORTHINGTON PUMP & MACHIN-
ERY CORPORATION, Respondent.

*May 29—June 25, 1919.*

*Corporations: Sale of real property: Brokers: Compensation for
services: Ability and willingness of party procured to per-
form: Authority of local manager.*

1. In an action to recover commissions for the sale of real estate,
   where it was shown that B., from whom plaintiff received his
   instructions to sell, was merely taking care of the property for
   the defendant corporation, but was not an officer thereof and
   had no authority to sell except to place the property in the
   hands of agents other than plaintiff, plaintiff is not entitled to
   commissions.
2. Where there is no evidence showing that the parties with whom
   plaintiff negotiated were ever willing or able to close a deal
   with defendant on any terms, plaintiff is not entitled to com-
   missions.

APPEAL from a judgment of the circuit court for Milwau-
kee county: LAWRENCE W. HALSEY, Circuit Judge. *Af-
firmed.*

Action to recover commissions on sale of real estate. The
plaintiff in June, 1914, was assessor of the city of West Allis.
At a meeting of the board of review of that city held in June,
1914, one J. D. Bird, the local manager of the *Worthington
Pump & Machinery Corporation,* a foreign corporation, ap-
peared before the board of review and objected to the assess-
ment placed upon the plant of the Fred M. Prescott Steam
Pump Company, then controlled by the receivers of the In-
ternational Machinery Company, also a foreign corporation.
Mr. Bird there stated that the company would sell the prop-
erty for $75,000.    Plaintiff then told him that he could sell
the property for that amount, whereupon Mr. Bird, as
claimed by the plaintiff, authorized the plaintiff to go ahead
and sell the property at that figure and stated that he would
pay him the regular commission for so doing.    Plaintiff had
some negotiations with a Mr. Hedgin.    Mr. Hedgin, how-

ever, died in the fall of 1915 and the negotiations fell through. In April, 1916, the plaintiff interviewed Mr. Bird with reference to a sale to Harper and Squier. In a conversation with Mr. Bird the plaintiff informed him that Harper and Squier wished to lease the plant with an option to purchase. Mr. Bird informed him that the owners were desirous of disposing of the property. Squier and Harper proposed that they and their associates form a corporation, the names of the other associates having never been disclosed to Mr. Bird. About three weeks later and in the forepart of May the plaintiff informed Bird that his clients were endeavoring to raise the necessary money. Plaintiff claims that Bird from time to time assured him that in the event that other purchasers turned up he would be given an opportunity to pay down sufficient money to hold the plant. Mr. Harper died in August, 1916, and Mr. Fritz then came into the negotiations. The price named by the plaintiff to his customers was $120,000, with a suggestion that a cash offer of $100,000 would take the property. Negotiations continued, but the intending purchasers did nothing definite. In January, 1917, there appeared in a newspaper an advertisement in which it was stated that one Greene had the exclusive sale of the property. There was a meeting at the Prescott plant, of Squier, Fritz, and the plaintiff, brought about by the advertisement. In February, 1917, one Thompson, a capitalist, purchased the property for $76,000 and resold it on a land contract to Mr. Fritz and his associates for $86,000, receiving $10,000 in stock of the company making the purchase.

Mr. Bird was local manager of the Power Mining & Machinery Company. The defendant corporation was organized apparently to take over the property of the International Company and the Power Mining & Machinery Company. The plant of the Fred M. Prescott Company was owned by the International Machinery Company in June, 1914. The

receivers at that time had no representative in Wisconsin. The receivers placed the property in the hands of Bird to look after and protect, for which purpose a watchman was employed.   On December 30, 1913, the Power Mining & Machinery Company, in a letter addressed to Bird, advised him that they would sell the property, that the asking price was $225,000, and that they wished the sale made on a cash basis.   Pursuant to that letter the property was placed in the hands of one F. W. Rogers in June, 1914.   Rogers left the state during 1915 and he placed the property in the hands of Mr. Shenners.   The Rogers agency continued until July, 1915.   In that month Bird was instructed by his superiors to withdraw the property from the market, as they proposed to employ the plant in the manufacture of munitions.   Bird testified that he appeared before the board of review on his own motion.   He denied the contract with the plaintiff, and in November, 1916, Nathaniel Greene was given the exclusive agency for the sale of the property.   At the close of plaintiff's case the defendant moved for a nonsuit, which was granted, and from a judgment dismissing the action the plaintiff appeals.

*Joseph E. Tierney* of Milwaukee, for the appellant.

For the respondent there was a brief by *Bottum, Bottum, Hudnall & Lecher*, and oral argument by *F. L. McNamara*, all of Milwaukee.

RosenBerry, J.   Plaintiff claims that under the doctrine laid down in *Garrick T. Co. v. Gimbel Brothers,* 158 Wis. 649, 149 N. W. 385, the agency of Bird to authorize him to make sale of the property is sufficiently proven.

It is to be noted that Mr. Bird was not an officer of the defendant company; that he was not in possession of the property as manager, but for the sole and specific purpose of preserving the same; that no express authority is shown for him to appear before the board of review or to make any disposi-

tion of the property other than that of placing it in the hands of the agent, Rogers, and later in the hands of Nathaniel Greene, as appears from the statement of facts. There is no evidence that Mr. Bird had any authority to enter into the arrangement by virtue of which the plaintiff claims the defendant became liable. There was no evidence that Bird, to the knowledge of the plaintiff, had ever pretended to deal with reference to this property. In the case relied upon Greenwald was a vice-president and the responsible executive head of the defendant company in this state. The act which he did was one of a class which his predecessor with the same powers had repeatedly done, to the knowledge of the plaintiff in that case. No reasonable man would conclude that a superintendent of a manufacturing plant, as such, had authority to sell and dispose of the property of his employer. The cases are not similar in any material aspect. There is no evidence in this case which would sustain a verdict finding that Bird was the authorized agent of the defendant for the sale of the property.

There is no evidence that Squier and Fritz were willing and able to buy. Thompson was induced to purchase the property and to resell it to Squier and Fritz and their associates at an advance of $10,000. There is no evidence that the parties with whom the plaintiff was negotiating were ever ready or able to close a deal with the defendant on any terms.

*By the Court.*—Judgment affirmed.