CALIFORNIA & HAWAIIAN SUGAR RE-
FINING CORPORATION v. MASON
BY-PRODUCTS CO.

Circuit Court of Appeals, Ninth Circuit.
January 9, 1928.

No. 5135.

1. Sales ⬡⟿22(4)—Offer of sale, not accepted
without qualification, held not contract au-
thorizing subsequent action for purchase
· price.

Where offer of seller relative to contract
for purchase of molasses was not accepted with-
out qualification, in that seller under terms of
offer did not obligate himself to deliver amount
thereafter agreed on, nor did buyer agree to ac-
cept required monthly delivery, there was no
contract on which to base an action for pur-
chase price.

2. Sales ⬡⟿22(1)—Offer to sell imposes no
obligation, until it is accepted according to its
terms.

An offer to sell imposes no obligation until
· it is accepted according to its' terms, since no
contract is complete without mutual assent of
parties, and so long as negotiation remains
open, and imposes no obligation on either par-
ty, one may decline to accept, or other may
withdraw his offer.

In Error to the District Court of the
United States for the Southern Division of
the Northern District of California; Frank
H. Kerrigan, Judge.

Action by the California & Hawaiian Sug-
ar Refining Corporation against the Mason
By-Products Company. Judgment of non-
suit, and plaintiff brings error. Affirmed.

Sidney Ballou and Wm. B. Tyler, both
of San Francisco, Cal., for plaintiff in error.

Sullivan & Sullivan and Theo. J. Roche,
all of San Francisco, Cal., and Thomas P.
Boyd, of San Rafael, Cal., for defendant in
error.

Before GILBERT, RUDKIN, and DIE-
TRICH, Circuit Judges.

RUDKIN, Circuit Judge. This was an
action to recover the purchase price of a
quantity of molasses. Under date of Decem-
ber 8, 1925, the ·plaintiff addressed a letter
to the defendant stating: "In confirmation
of conference with you on December 5, 1925,
we are willing to enter into negotiations to
contract with you for Hawaiian plantation
feed molasses on approximately the follow-
ing bases, detailed contract to be submitted
to you after you have decided upon the basis
you desire." Then followed three separate
and distinct propositions. The first covered
a period of three years, from December 1,
1925, to November 30, 1928; the second, a
period of one year, from December 1, 1925,
to November 30, 1926; and the third, a pe-
riod of two years, from December 1, 1926,
to November 30, 1928. The second proposi-
tion provided for the sale of 30,000 tons, of
2,000 pounds each, at a price of $9 per ton,
delivered to the barge of the purchaser along-
side the distributing plant of the vendor at
Crockett, California. The price stated was
subject to additions and deductions for mo-
lasses containing more or less than 45 per
cent. combined sucrose and reducing sugars.
Deliveries were to be made upon 30 days'
notice, but the vendor did not obligate itself
to deliver more than 3,000 tons in any calen-
dar month. The third proposition was the
·same as the first, except for the period cov-
ered. All terms of payment under any con-
tracts to be entered into, based on the fore-
going propositions, were to be in form and
upon conditions satisfactory to the vendor.
It was further provided that all terms and
conditions in any contracts that might be en-
tered into would be similar to those shown in
the usual form of sales agreement, under
which the purchaser had purchased molasses
from the vendor in the past.

Under date of December 17, 1925, the de-
fendant addressed a letter to the plaintiff ac-
cepting the second proposition contained in
the foregoing letter, for 30,000 tons of mo-
lasses at a price of $9 per ton of 2,000
pounds, based on 45 per cent. sugar content.
But it was stated in the letter of acceptance
that none of the molasses would be required
by the purchaser until during the month of
March. The third proposition was likewise
accepted, but the acceptance was conditional
upon working out the question of price to fit
the alcohol price, as explained in a previous
conference between the parties, and also up-
on condition that, if the vendor sold molasses
to competitors of the purchaser for less than
the price fixed by the contract, it would make
a like reduction to the purchaser. Under
date of December 19, 1925, the plaintiff ad-
dressed a second letter to the defendant, stat·
ing its understanding of the acceptance of
December 17, 1925. In this letter it was
stated that the vendor understood that the
second proposition was accepted, and that it
would proceed to prepare the usual form of
contract covering the transaction, and would
forward same to the defendant for execution
at an early date. The letter continued: "We
shall appreciate confirmation of our under-
standing that proposition No. 2 is accepted,
without relation to any further negotiations
that may be pending between us. In other
words, that proposition No. 2 stands upon
its own feet, and that contract shall be drawn
and signed immediately."

This letter was answered under date of December 22, 1925, but the defendant failed to confirm the understanding of the vendor as to the terms of acceptance. All the letter contained in that regard was the following: "My understanding of the molasses situation for the next three years is as I wrote to you on December 17th and we have only to iron out the details in regard to the price on proposition No. 3." Thereafter, on January 13, 1926, the plaintiff prepared a formal draft of the contract and submitted it to defendant. The defendant then suggested certain changes in the draft as proposed, and these were agreed to, but the contract itself was never executed. On April 12, 1926, the plaintiff by letter tendered delivery of 2,000 tons of molasses during that month, and requested the defendant to accept deliveries as provided in its letter of December 17. The tender was refused, and the refusal was followed by the present action. At the close of the testimony on the part of the plaintiff, the court below directed a nonsuit, and the judgment of nonsuit has been brought here for review. The only question presented for our consideration is: Was there a binding contract between the parties?

"The preliminary negotiations leading up to the execution of a contract must be distinguished from the contract itself. There is no meeting of the minds of the parties while they are merely negotiating as to the terms of an agreement to be entered into. To be final, the agreement must extend to all the terms which the parties intend to introduce, and material terms cannot be left for future settlement; nor is there a binding contract where, although its terms have been agreed on orally, the parties have also agreed that it shall not be binding until evidenced by writing. * * * Generally speaking, the circumstance that the parties did intend a subsequent agreement to be made is strong evidence that they did not intend the previous negotiations to amount to an agreement." 13 C. J. 289.

"The question whether an informal arrangement is intended by the parties to form a contract in and of itself or as only a step in the negotiations leading up to a binding contract in writing is not always easy of solution. The law undoubtedly is that an informal agreement complete in its terms will take effect if the parties so intend, though a more formal contract is expected to be afterwards made, provided that the formal contract is not to contain material provisions not contained in or to be inferred from the preliminary informal agreement." Garrick

Theatre Co. v. Gimbel, 158 Wis. 649, 149 N. W. 385.

"In determining which view is entertained in any particular case, several circumstances may be helpful, as: Whether the contract is of that class which [is] usually found to be in writing; whether it is of such nature as to need a formal writing for its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether the negotiations themselves indicate that a written draft is contemplated as the final conclusion of the negotiations. If a written draft is proposed, suggested or referred to, during the negotiations, it is some evidence that the parties intended it to be the final closing of the contract." Mississippi, etc., S. S. Co. v. Swift, 86 Me. 248, 29 A. 1063, 41 Am. St. Rep. 545.

[1, 2] The ruling of the court below must be sustained for two reasons: In the first place, the offer of the plaintiff in error contained in the letter of December 8, 1925, was not accepted without qualification, because under the terms of the offer the plaintiff in error did not obligate itself to deliver more than 3,000 tons in any calendar month, while under the terms of the acceptance the defendant in error did not obligate itself to accept any deliveries before the month of March, and inasmuch as the offer called for the delivery of 30,000 tons before December 1, 1926, it would require at least ten monthly deliveries of 3,000 tons each to make up that quantity, and these could not be made from March to November, inclusive. The difference, of course, was not great, but the rule of law on this subject is very strict.

As said by Mr. Justice Gray, in Minneapolis, etc., Ry. v. Columbus Rolling Mill, 119 U. S. 149, 7 S. Ct. 168, 30 L. Ed. 376: "The rules of law which govern this case are well settled. As no contract is complete without the mutual assent of the parties, an offer to sell imposes no obligation until it is accepted according to its terms. So long as the offer has been neither accepted nor rejected, the negotiation remains open, and imposes no obligation upon either party; the one may decline to accept, or the other may withdraw his offer; and either rejection or withdrawal leaves the matter as if no offer had ever been made. A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, unless the party who made the original offer renews it, or assents to the modification suggested."

Or, as said more explicitly by Judge Hen-

shaw, in Four Oil Co. v. United Oil Producers, 145 Cal. 623, 79 P. 366, 68 L. R. A. 226: "The rules for determining whether or not a proposal and acceptance constitute a binding contract are well settled, and by this court have been expressed in the following language: 'To constitute a binding contract made in this form [letters] there must be a proposal squarely assented to. If the acceptance be not unqualified, or go not to the actual thing proposed, then there is no binding contract. A proposal to accept, or an acceptance based upon terms varying from those offered, is a rejection of the offer. An offer imposes no obligation, unless it is accepted upon the terms upon which it was made. An acceptance must be absolute and unqualified.' "

Furthermore, the form of the offer, the form of the acceptance, the nature of the contract and its subject-matter, the subsequent negotiations between the parties, and the construction they themselves placed upon their prior negotiations all tend to show that they did not intend to be bound until the formal detailed contract, so often referred to throughout the negotiations, was fully agreed upon and executed. Thus, in the contract as proposed and agreed upon deliveries were to be made upon 30 days' notice, to be gradual throughout the term of the agreement, but in no case to exceed 4,000 tons in any calendar month. This provision was no doubt inserted to settle the difference between the original proposal and the acceptance. The contract as proposed and agreed upon also provided that deliveries might be made at the place indicated in the offer, or at any place in San Francisco Bay, at the option of the purchaser, provided the latter would pay the state tolls of 15 cents per ton when deliveries were made in the bay.

Again, the contract or proposal as agreed upon contained elaborate provisions for taking samples and making tests to ascertain the sugar content of the molasses for the purpose of fixing the ultimate price to be paid. Such a provision as the latter would seem an essential one in any contract of this kind. The right of the parties to insist upon these provisions and changes was never questioned, and it clearly appears from the entire record that neither party to the negotiations intended to be bound thereby until all the details of the contract were fully agreed upon and the formal contract itself was finally executed. The contention of the plaintiff in error that there was a contract from the beginning, or from the receipt of the letter of December 17, would therefore seem to be an afterthought.

As said by Lord Justice James, in Rossiter v. Miller, 5 Ch. D. 648: "On a question of construction, different minds may differ, but, for my own part, I have often felt that in cases of this nature parties have found themselves entrapped into contracts by letters which they wrote without the slightest idea that they were contracting."

The judgment is affirmed.