**BONDY v. HARVEY et al.**

**No. 106.**

Circuit Court of Appeals, Second Circuit.

Jan. 9, 1933.

David L. Podell, of New York City (Herman Shulman and J. Martin Seiler, both of New York City, of counsel), for appellant.

Maxwell E. Lopin, of New York City (Harold H. Corbin and Edward J. Bennett, both of New York City, and Fred R. Wright, of Milwaukee, Wis., of counsel), for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellant sues the appellees for fraud and deceit in inducing him to settle a valuable claim which he had against the appellees for a nominal consideration. The complaint alleged that the parties, together with the Plankinton Arcade Company, a Wisconsin corporation, entered into an agreement for a ninety-nine year lease of a parcel of land in the city of Milwaukee, Wis. The appellant asserts that the agreement contained all of the essentials for a valid lease. The appellees contend that the parties' minds did not meet on all the terms of the lease; that it was unenforceable, and therefore the appellant did not have a valid lease, and the settlement of the claim of a breach thereof by the appellees in no way caused damage to the appellant. The agreement in question provided for the lease of the land and for the erection of a theater thereon at a specified cost.

The complaint alleges that the appellees broke the agreement by not proceeding to procure the vacation of an alley, by not preparing for the execution of the formal lease, and by not delivering possession of the property to the appellant.

Appellant commenced a suit in New York Supreme Court against the appellees, and recovered a judgment for a large sum which was later reversed by the Appellate Division of the Supreme Court because of an erroneous charge relating to the question of damages. See Bondy v. Harvey, 218 App. Div. 126, 217 N. Y. S. 877. Pending the new trial, it is claimed that the appellees persuaded the appellant, by fraud and deceit, to settle the case for a small sum of money; the representation being that the appellees could not pay a judgment if entered against them. Relying upon such misrepresentations, a release

522

of the cause of action was given for $12,000. It is now alleged that the appellees had assets of much greater value, and that a judgment if obtained could have been collected.

As a defense, the appellees argue that the written agreement entered into by the parties and attached to the complaint created no obligation upon either party, that it was an agreement to agree at a future time upon terms to be fixed, and, it is asserted, that, assuming the appellant was led by fraud to release the claim, there has been no damage because there existed no basis for this action on the agreement.

While the Appellate Division of the Supreme Court assumed that the contract for the lease was sufficient (Bondy v. Harvey, 218 App. Div. 126, 217 N. Y. S. 877), it must be admitted that the question here presented is not res adjudicata. The question here argued was not there raised. The effect of the reversal in the state court was to put the parties in the same position as if no judgment had been entered. Commercial Bank v. Sherwood, 162 N. Y. 310, 56 N. E. 834; Hayden v. Florence Sewing Machine Co., 54 N. Y. 221. The result of the reversal in the Appellate Division of the Supreme Court need not embarrass this court in deciding the questions now presented. Rogers v. Chicago, Rock Island & Pacific R. Co., 39 F.(2d) 601 (C. C. A. 8); Higgins v. California Prune & Apricot Grower, Inc., 3 F.(2d) 896 (C. C. A. 2).

The contract to lease the land was made by the parties in Wisconsin, and the law applicable thereto is that of Wisconsin. Hotel Woodward Co. v. Ford Motor Co., 258 F. 322 (C. C. A. 2).

The contract in question is referred to as "Articles of Agreement." In it the parties are named; the terms of the demise and lease are fixed; the term is specified; the property described; the rental fixed; and "a formal ninety-nine year lease of the premises so hereby demised" was to be executed. The agreement provides for "usual and proper covenants" as to (a) "forfeiture," (b) "peaceable possession," (c) "warranty," (d) "surrender and delivery," and (e) "re-entry." Moreover, it was to contain "in brief all of the usual and formal clauses to the mutual satisfaction of the parties * * * for the protection of the respective rights of the lessors and the lessee in such a demise as is herein provided for." An abstract of title was to be furnished. The demise was not to become effective except upon the vacation by the city of Milwaukee of a described alley.

The lessors were "to proceed in good faith, with due diligence, to procure the vacation" of the alley, and were to prepare, execute, and deliver the formal lease provided for and to deliver possession of the demised premises. The Plankinton Arcade Company was to permit "the use of all of the corridors, passageways, lobbies, entrances and exits contained within the Plankinton Arcade Building," by theater patrons. They were to permit the erection of ticket booths at the entrance of the building, the erection and maintenance of markees over each entrance, the use of space for advertising, the erection of stairways or means of entrance to the theater in the corridors of the building, and the use of certain rooms at a fixed rental. The theater was to be operated a certain number of weeks during the year, and burlesque shows were not to be given. The light and heat were to be furnished at regular rates. The lessee was to begin the erection of the theater within a specified time after the vacation of the alley. The cost of the theater was fixed; a special assignment clause was provided; and the agreement was stated to be binding upon and inure to the benefit of the heirs, executors, and assigns of the parties. The lessee was permitted to place new doors at the entrance of the Plankinton Arcade building; to erect frames for advertising at each entrance, and to maintain ornamental easels at each entrance. The lessee's privilege for the use of signs was to be exclusive. Light of the markees was to be at the expense of the lessee. The lessee had the option to execute a contract for the erection of the theater on the same terms as offered others if "said formal lease" is not executed through the fault of the lessors.

The court below held that, because of the provision of the lease reading, "it being agreed and understood between the parties hereto that before the party of the second part shall take possession of the premises so hereby demised there shall be executed * * * a formal ninety-nine year lease of the premises is hereby demised, containing the usual and proper covenants of a lease of that character * * * and in brief all of the usual and formal clauses to the mutual satisfaction of the parties hereto, * * *" the parties had not agreed fully, and consequently that the articles of agreement were not enforceable.

The cases in Wisconsin to which we are referred, Leggett & Co. v. West Salem Canning Co., 155 Wis. 462, 144 N. W. 969, and Goldstine v. Tolman, 157 Wis. 141, 147 N. W.

7, 8, are not conclusive. In the Leggett Case, the action was brought by a buyer of canned goods for breach of the sale contract. The Supreme Court, reversing the lower court which held that the telegrams exchanged by the parties constituted a contract, held that the evidence conclusively showed that a contemplated later formal agreement was expected to contain terms not contained in or to be implied from the telegraphic communications.

In the Goldstine Case, the plaintiff sought specific performance of a contract to lease realty in Wisconsin for ninety-nine years. The agreement consisted of a preliminary agreement to enter into a lease for ninety-nine years "on the usual terms as apply to a ninety-nine year lease," and provided for the payment of attorney's fees "providing this lease is not merged into an actual agreement and new lease." There was also an agreement "supplemental to the preliminary agreement" which stated that "the said long term lease shall contain" certain provisions. After negotiations in which each party prepared and tendered leases unsatisfactory to the other, the matter lapsed, was taken up again, but no satisfactory arrangement was reached, and finally the property was leased to a third party. The Supreme Court reversing the lower court dismissed the complaint and stated: "We do not think they [the two preliminary agreements] evidenced a contract * * * and we think it is very evident that the parties did not so regard those tentative agreements. * * * This conclusion can be quite satisfactorily reached from the provisions of the preliminary agreements. It is also apparent from the construction which the parties themselves placed upon these contracts." The court found that the parties did not mean to contract. It is doubtful that subsequent conduct should determine the initial validity of the contract.

In Garrick Theatre Co. v. Gimbel, 158 Wis. 649, 149 N. W. 385, the action was to recover $500 which the plaintiff alleged the defendant had agreed to pay for the surrender of the last year of a lease. The trial court held that the defendant's employee did not have power to contract for the defendant. The Supreme Court reversed on this point, and, in ordering judgment for the plaintiff, held it was entirely clear that the contract was regarded as binding by the parties and that the subsequent and formal papers were intended to and did merely incorporate what had been agreed upon.

In both the Goldstine and Garrick Cases, the court permitted the subsequent action of the parties to weigh considerably in the determination of the initial validity of the contract. But in the case at bar there is no similar subsequent conduct. The validity of the contract must necessarily be determined by the language used in the articles of agreement.

The phrases "usual and proper covenants" and "usual and formal clauses" do not of themselves invalidate the agreement. Scholtz v. N. W. Mutual Life Ins. Co. (C. C. A.) 100 F. 573; 1240 Third Ave., Inc., v. Birns, 232 App. Div. 522, 250 N. Y. S. 331; Mercer v. Payne, 110 Neb. 28, 192 N. W. 951. They do not render the agreement too indefinite because as a matter of proof such expressions may have a sufficiently definite meaning. In the Goldstine Case, the Wisconsin court decided the evidence showed no such definite meaning. It has been held that the question of whether a specific provision in a lease is a common and usual covenant is for the jury. Bennett v. Womack, 3 Car. & P. 96, 172 Eng. Rep. 339, rule refused by the full bench, 7 B. & C. 627, 108 Eng. Rep. 856 (K. B. 1828).

▉▉ The phrase "to the mutual satisfaction of the parties" was held below to render the contract indefinite, a mere agreement to agree, and therefore unenforceable. But the contract is not indefinite. As stated above, the terms agreed upon are particularized and sufficient to constitute a valid lease. The phrase "all the usual and formal clauses" we think was intended to state generally such clauses as the forfeiture, peaceful possession, warranty, surrender, re-entry, and other clauses which are familiar in leases. "Mutual satisfaction" might be said to mean that the specified clauses should satisfy the parties, but in this we think nothing was left open to be agreed upon by the parties. The parties evidently thought they were bound by the contract. The "Articles of Agreement" do state a contract between the parties. Details of familiar covenants, which are usual in leases as protection for the parties, might well be left open for future specification without destruction of the contract or denial of remedy thereunder. Adamson v. Alexander Milburn Co., 275 F. 148 (C. C. A. 2); Weed v. Lyons Petroleum Co. (D. C.) 294 F. 725; N. E. D. Holding Co. v. McKinley, 246 N. Y. 40, 157 N. E. 923; Ansorge v. Kane, 244 N. Y. 395, 155 N. E. 683; Newburger v. Amer. Surety Co., 242 N. Y. 134, 151 N. E. 155. These cases permit a reasonable interpretation that the parties impliedly understood their agreement to incorporate such usual and formal clauses as are put in leases when the lease is finally drawn. As said in United

524

States v. McMullen, 222 U. S. 460, 472, 32 S. Ct. 128, 131, 56 L. Ed. 269: "The power to change details, reserved by the United States, did not make the contract any the worse, and there were full provisions for ascertaining a change in compensation where any such change was proper." The primary object of the court always is to find the intention of the parties as expressed in the agreement, and, if the parties place it in the power of the draftsman to state the usual and formal clauses, it is expected that this formality would be done to the reasonable satisfaction of the parties. In order to defeat the contractual obligations, it must appear that the terms omitted were so essential to the contract that it would be unfair to enforce the remainder. Palmer v. Aeolian Co., 46 F.(2d) 746 (C. C. A. 8); Cohen & Sons v. Lurie Woolen Co., 232 N. Y. 112, 133 N. E. 370.

The phrase "mutual satisfaction" means reasonable satisfaction. The contract may be upheld if a class of "usual and formal clauses" is proved to be known to the law of Wisconsin. Assuming that mutual satisfaction is equivalent to satisfaction to each party independently, that mutual satisfaction necessarily would have to be reasonable satisfaction. Thus, reading the clause "all the usual and formal clauses [not all the clauses] to the mutual satisfaction of the parties for the protection of the respective rights [not arbitrary wishes] * * * except * * *" (as then specifically provided) aids this construction.

In Adamson v. Milburn Co., supra, this construction was adopted. In Folliard v. Wallace, 2 Johns. (N. Y.) 395, a clause that the buyer should be "well satisfied that the title was undisputed," entitled the buyer to a reasonable satisfaction, and we think that case is persuasive analogy for the construction which we here adopt. The cases cited below referring to reasonable satisfaction (Mayer v. McCreery, 119 N. Y. 434, 23 N. E. 1045; Sun Printing Ass'n v. Remington Paper Co., 235 N. Y. 338, 139 N. E. 470; Petze v. Morse Dry Dock Co., 125 App. Div. 267, 109 N. Y. S. 328) did not involve agreements using the word "satisfaction." Nor do we think that the doctrine of reasonable satisfaction should be restricted to cases of part performance or to cases in which personal taste has no place. Nor may a party be permitted to be arbitrary in entering into a lease for which he has contracted as here. The burden we have here is to find out whether the parties have reserved the right to be arbitrary or whether they have such right for a reasonable satisfaction controlling upon both contract-

ing parties. We think that we should construe "mutual satisfaction" as reasonable satisfaction and thus uphold the contract The specific covenants were detailed by the parties. A jury may, from the proof adduced at the trial, answer the inquiry of what are usual and formal clauses. The intention of the parties was to leave for a future description these latter clauses when the lease was prepared. Any objection which the parties might have thereto must be based upon reason. If a jury finds upon a trial that there are customary, usual, and formal covenants as used in leases, and the appellant shows a willingness to agree thereto, he may succeed. On the other hand, if there were need of the future agreement on additional or subsidiary provisions, it would constitute a condition precedent to the initial validity of the agreement. But it is clear that the parties entered into an enforceable contract if the usual and formal clauses be found in the lease when executed which will be those known and expected to be placed in leases, for it was implied in the agreement of the parties they would be so placed, to their mutual satisfaction, which means reasonable satisfaction, and not an arbitrary determination of satisfaction.

Judgment reversed.