E. T. WILKINS, d/b/a Wilkins, E. T. &
Associates, and E. T. Wilkins & Asso-
ciates, Inc., a corporation, Appellants,

v.

Orval O. KENDLE, Appellee.

No. 16431.

United States Court of Appeals
Eighth Circuit.

March 1, 1961.

Sterling F. Mutz, Lincoln, Neb., for appellants.

H. B. Evnen, Lincoln, Neb., for appellee.

Before VOGEL and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

VOGEL, Circuit Judge.

Orval O. Kendle, plaintiff-appellee, brought suit in the District Court of Lancaster County, Nebraska, to recover from E. T. Wilkins, d/b/a Wilkins, E. T. & Associates; and E. T. Wilkins & Associates, Inc., a corporation, defendants-appellants, on two alleged oral contracts of employment. The case was removed to federal court on the grounds of diversity of citizenship and amount in controversy. Judgment in favor of the appellee was entered on a jury verdict for $923.75 on the first cause of action involving E. T. Wilkins, d/b/a Wilkins, E. T. & Associates, and $13,770.00 on the second cause of action involving E. T. Wilkins & Associates, Inc. This is an appeal from such judgment.

The appellants were in the business of appraising property for tax purposes. Kendle, the appellee, was engaged in selling the appellants' services. He alleged in his petition that he entered into two oral contracts with the appellants, one on February 1, 1955, for the year 1955 and another on February 1, 1956, for the year 1956, each contract providing, inter alia, for commissions on total sales exceeding $150,000.00. By answers the appellants deny that the terms of the employment were as claimed by the appellee. They allege that they agreed to pay appellee $350.00 per month plus expenses and, "That the defendants did not at any time agree to pay the plaintiff 5% com-

mission on all gross sales made in the years 1955 or 1956 in excess of the $150,-000, and that the gross sales of the plaintiff during 1955 did not exceed the sum of $150,000, but amounted to only the sum of $91,770 and much less for the year 1956."

The appellants contend that the evidence does not sustain appellee's causes of action and that there was no meeting of minds upon important considerations involved in the contracts for commissions; that the testimony shows that the alleged oral contract of February 1, 1956, was void under the statute of frauds because Kendle testified that it was to extend from January 1, 1956, to December 31, 1957, a period of two years; that the appellee, by the allegations of his petition, admitted that the terms of the oral contracts were later to be put into writing; that this was not done and that no such contracts were entered into; that Judge Van Pelt's memorandum and order overruling appellants' motions to set aside the verdict and for judgment notwithstanding the verdict in accordance with their motion for directed verdict, or in the alternative for a new trial were based upon a "misconception of the evidence"; and that the appellants' motion for leave to amend the answers to conform to the proof by setting up the defense of the statute of frauds should have been sustained.

■ In consideration of this appeal, we must view all the evidence in a light most favorable to sustaining the jury's verdict. As stated by Judge Gardner in Chicago Great Western Ry. Co. v. Scovel, 8 Cir., 1956, 232 F.2d 952, 955, certiorari denied 352 U.S. 835, 77 S.Ct. 53, 1 L.Ed. 2d 54:

> " * * * we must view the evidence in a light most favorable to the prevailing party and we must assume that all conflicts in the evidence have been resolved by the jury in his favor and that the evidence proves all facts which it reasonably tends to prove. The prevailing party is also entitled to the benefit of all such fa-

vorable inferences as may reasonably be drawn from the evidence. If, when so considered, reasonable minds might reach different conclusions then the case presents issues of fact to be submitted to the jury and not issues of law to be determined by the court. Lowden v. Hanson, 8 Cir., 134 F.2d 348; Carter Carburetor Corp. v. Riley, 8 Cir., 186 F.2d 148; Chicago, Rock Island & Pacific Railroad Co. v. Lint, 8 Cir., 217 F.2d 279; Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720."

With such rule guiding us, we consider the evidence, much of it conflicting.

■ For the period prior to January 6, 1956, E. T. Wilkins operated as an individual doing business as Wilkins, E. T. & Associates. Wilkins was engaged in the business of appraising, classifying and reassessing real and personal property for tax valuation purposes. On January 6, 1956, the business was incorporated as E. T. Wilkins & Associates, Inc. The corporation continued the Wilkins business. For the purposes of this opinion we shall refer to the appellants, singly and collectively, as Wilkins.

Kendle first started working for Wilkins in 1953 on a salary plus expense basis. Salary and expenses were increased from time to time. Kendle testified that on or about February 1, 1955, at Lincoln, Nebraska, he and Wilkins entered into an oral contract which was to cover their relationship for the entire year 1955. He claimed that the agreement therein was that Wilkins would pay him $175.00 bimonthly, 5¢ per mile for the use of his automobile, plus other expenses, and 5% commission on all gross sales exceeding $150,000.00; that the agreement was complete in all details; that its terms were suggested by Wilkins and accepted by him; that Wilkins told him that the office was always glad to assist in the sales and it would not affect his 5% commission; that Wilkins stated he would make notes of the same but never submitted them to him.

Concerning what is referred to as the second oral contract, Kendle's testimony is that in the fall of 1955 he requested a meeting with Wilkins and at the meeting asked for a working agreement for the year 1956. Wilkins said he was pleased with Kendle's services and agreed that they ought to have some understanding for the year 1956. Wilkins said, "We'll get something in writing." Subsequent to this discussion, Wilkins, through his attorney, Clyde K. Rhein, submitted a written proposal to Kendle. Kendle rejected this because it reduced his salary and expenses from the amounts already agreed upon as of February 1, 1955. Kendle then employed an attorney to draw a counter-proposal which was in turn submitted to Wilkins. This proposal, inter alia, provided for a two-year period ending December 31, 1957. Wilkins did not agree to the counter-proposal. No further written proposals were made by either party.

Kendle testified that on or about February 1, 1956, he met with Wilkins and Rhein in Little Rock, Arkansas. Kendle at that time had assurance that he was going to sell Little Rock, Arkansas, or Pulaski County. He felt business was on the upswing, that he was doing a good job, that he should have an increase in salary and expenses and "wanted something more concrete". Wilkins and Rhein were quite elated over the Little Rock sale and told Kendle that his work in Arkansas was unique and that he would be entitled from then on to 5% commission on all Arkansas sales, whether he made them or not; that he was to get $5,000.00 a year, his car expense increased to 7¢ a mile and all his expenses were to be paid. On sales made outside of Arkansas by him he was to receive 5% commission. On sales started by him outside Arkansas but completed by someone else, he was to receive 3½% commission. He was to receive monthly reports on sales and his commissions were to be paid every three months during the year 1956, the commissions, however, not to start running until he had sold $150,000.00 worth of business. Kendle further testi-

fied that these terms were agreeable to him and that he accepted them; that the arrangement was in its entirety; that no conditions were left for subsequent determination; that the agreement was to run for the year 1956; and that Mr. Rhein said he would make notes of the terms but they were never submitted to him.

Kendle received no commissions, although he had a number of discussions with Wilkins in relation thereto. During the first part of March at the Kendle home Mr. Wilkins stated, in response to an inquiry by Mrs. Kendle, that he was paying Orval Kendle a 5% commission and a salary of $5,000.00 plus expenses. In June, 1956, in Little Rock, Arkansas, another discussion was had in the presence of Mrs. Kendle. When Kendle asked when he was going to be paid his 5% commission Wilkins told him that he was putting the commissions due Kendle in a special fund in a bank in Cleveland, Ohio, " * * * so that nobody else could draw it out except him, and anyway the balance that was left he wouldn't have to pay any income tax on it." To which Kendle replied that he would prefer to handle his own money. In November, 1955, Wilkins, on a hunting party with Robert W. Yates, Kendle's son-in-law, told about Kendle's probably lining up the Pulaski County job and made the statement that Kendle's 5% commission on the job would be $15,000.00. Wilkins told other witnesses about Kendle's work and that he was being paid 5% on sales over $150,000.00. Kendle's testimony is well corroborated.

In July, 1956, Kendle again asked Wilkins when he could expect payment of his 5% commission, this in front of another witness, and Wilkins stated that he did not then have the money and would have to wait until the counties had paid him.

Clyde K. Rhein, secretary of the E. T. Wilkins & Associates, Inc., who was also Wilkins' attorney, testified that about August 1, 1956, at Little Rock he had a discussion with Kendle, at which time Kendle said nothing about having any verbal agreement on February 1, 1956,

but claimed he was entitled to a commission on sales in excess of $150,000. This, Rhein said, was undisputed, claiming the only question being whether the commission was limited to work exclusively performed.

The appellants' statement of the case contains the following:

"* * * Many times more than one salesman worked on a particular prospect, *if they had an overwriting commission it was usually five (5%) per cent* and was paid to the salesman who wrote the contract, if he did so without the aid of Mr. Wilkins or another salesman, and if there were other salesmen involved the matter of the division of the commission was left to be determined by Mr. Wilkins, who would listen to the problem and determine how much each of the salesmen contributed to the final sale of the contract, and allocate the proportion to each salesman on an equitable basis.

"When the proportionate contributions of the salesmen to a particular job were determined, each salesman had added to his total production the amount determined by Mr. Wilkins, *to be included in the event the salesman was entitled to a commission by virtue of having written more than the minimum business which, in the case of Mr. Kendle, was a minimum of $150,000 during the calendar year 1955, and the commission applied to business in excess of that amount only.*

\* \* \* \* \* \*

"Kendle was first employed by Wilkins on October 11, 1953, as a salesman on a salary of $200 per month and expenses which, on October 1, 1954, was raised to $350 per month and expenses, and again *on January 1, 1956, his salary was increased to $5,000 a year or $416.66 per month and expenses*. All amounts agreed to be paid as salary and expenses were paid in full by Wilkins by check until the employment was terminated by Kendle, quitting in the early Fall of 1956." (Emphasis supplied.)

In August, 1956, Wilkins, through his attorney, Rhein, wrote to Kendle withdrawing from negotiations for a written contract, saying, inter alia:

"Because of the wide disparity between the maximum which we contemplate offering for your service and the minimum which you wish to receive, E. T. Wilkins & Associates has withdrawn from negotiations in this matter."

Kendle did not reply to the letter. Shortly after receiving it, however, he quit Wilkins' employ and began the organization of a company operating in the appraisal business in competition with Wilkins.

It is the contention of Wilkins that the conversations between the parties were nothing more than negotiations and offers which were rejected by both parties and that there was no meeting of minds because several important things were left for future agreement. In so contending, they rely upon the fact that in Kendle's petition as to each alleged oral contract, he stated "the terms of which later were to be put in writing" and that the exchange of written proposals in the fall of 1955, which were rejected, indicated no meeting of the minds and hence no contract.

While it is agreed that the oral contracts were never reduced to writing, the actions and statements of the parties, the admissions of Wilkins, the fact of Kendle's continuing to work, support the conclusion that binding, oral contracts, complete in their terms, had been consummated. The dispute is as to what the contracts provided. The two appellants in their separate but similar answers claimed that the agreements were to pay Kendle the sum of $350.00 per month and deny an agreement to pay commission on gross sales in excess of $150,000.00, yet in the appellants' statement of the case they, by their own admissions, concede that Kendle was entitled to a commission, for having written more than the "mini-

mum business which, in the case of Mr. Kendle, was a minimum of $150,000 during the calendar year 1955, and the commission applied to business in excess of that amount only." Additionally; by their own admissions, appellants concede, in their statement of the case, that Kendle's salary was increased from $350.-00 per month to $5,000.00 per year, all of which lends additional support to Kendle's testimony and the jury verdict in his favor.

■ In his memorandum denying Wilkins' motions, the trial judge, dealing with Wilkins' contention that Kendle judicially admitted in his petition "that no oral contract arose from the conversation by the allegation therein that the parties 'agreed orally to a contract, the terms of which later were to be put in writing' ", stated:

"* * * The Court interprets the language in this allegation in the petition as stating no more than that the parties had reached a meeting of the minds and an agreement between them as to a binding contract, and that the terms of this contract would be set down at a later date in writing as a memorial of their previously agreed-upon terms. Because 'an informal agreement complete in its terms will take effect if the parties so intend, though a more formal contract is expected to be afterwards made * * *' (Reynolds & Maginn v. Omaha Gen. Iron Wks., 105 Neb. 361, 180 N.W. 584 (1920) quoting with approval from Garrick Theatre Co. v. Gimbel Bros., 158 Wis. 649, 149 N.W. 385. See also 1 Williston, Contracts, Par. 28 (Rev.Ed.), the issue as to whether the parties did or did not reach an oral contract in their conversations was not judicially admitted by this allegation and evidence could be properly introduced upon the subject and submitted to the jury."

We are in entire agreement with that statement. At most, the appellants present disputed issues of fact. Wilkins would have the conflicting testimony viewed in a light most favorable to them and, in effect, they so argue. The rule, as we have stated supra, however, forces the opposite approach as Kendle was the prevailing party. The jury could, and obviously did, decide on conflicting but nevertheless substantial testimony that there were two oral contracts of employment, one for 1955 and one for 1956; that each contract was complete and binding in itself; that the terms thereof were as testified to by Kendle; and that they were understood and agreed to by both parties. The fact that they intended to, but did not, reduce the oral contracts to writing is immaterial. It is the law of Nebraska as well as the general law that an informal oral agreement which is complete in its terms is binding on the parties if they so intend, even though it was anticipated that they would subsequently set down the terms of the oral agreement in a formal written instrument. In the case cited by the trial court, Reynolds & Maginn v. Omaha General Iron Works, 1920, 105 Neb. 361, 180 N.W. 584, the Supreme Court of Nebraska said:

"* * * In view of our conclusion that the letter expressed all the terms essential to a complete contract, and became so when accepted, it was, in our opinion immaterial that the parties may have contemplated reducing it to a more formal writing. 13 C.J. 290, 291; United States v. P. J. Carlin Construction Co., 224 Fed. 859, 138 C.C.A. 449; Singer v. Disston & Sons, 178 App. Div. 108, 165 N.Y.Supp. 94.

" 'The law undoubtedly is that an informal agreement complete in its terms will take effect if the parties so intend, though a more formal contract is expected to be afterwards made, provided that the formal contract is not to contain material provisions not contained in or to be inferred from the preliminary informal agreement.' Garrick Theatre Co. v. Gimbel Bros., 158 Wis. 649,

149 N.W. 385." 180 N.W. at page 586.

See also 165 A.L.R. 756.

We do not have here incomplete preliminary agreements not to be binding until all the terms had been agreed to and set down in writing. The oral agreements were not " * * * uncertain, indefinite and vague as to material matters" as referred to by this court in Fremon v. W. A. Sheaffer Pen Co., 8 Cir., 1954, 209 F.2d 627, 630, a case relied on by the appellants.

■ Appellants claim error in the denial of their motion (made some four months after entry of judgment) for leave to amend their answers to conform to the proof by adding a defense based upon the statute of frauds, Section 36–202(1), Revised Statutes of Nebraska, 1943 (reissue 1952). The amended separate answers of the appellants did not affirmatively set forth the statute of frauds as a defense, as required by Rule 8(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The trial court stated:

> "The defendants had an opportunity during trial to make the proposed amendment, but failed to do so. No excusable neglect is shown."

Citing Simms v. Andrews, 10 Cir., 1941, 118 F.2d 803, it denied the motion. We think the trial court's action was entirely sound. The parties did not " * * * by express or implied consent * * *" raise any issues not stated in the pleadings. Rule 15(b), Federal Rules of Civil Procedure, 28 U.S.C.A. See Gallon v. Lloyd-Thomas Co., 8 Cir., 1959, 264 F.2d 821, 823, 825; Vol. 3, Moore's Federal Practice § 15.13 at pp. 846–847. The point is of no vital consequence in this particular case, however, for we find that in spite of appellants' failure to allege the defense in their answers, it was, from a practical standpoint, given consideration by both court and jury. In this connection the court charged the jury as follows:

> "The Court charges you that a contract of employment for a term or period of time less than one year from the date of the making as claimed by plaintiff in each of his two causes of action need not be in writing in order to be binding on the parties. An oral contract of employment for a term of less than one year from the date of the making is sufficient unless you find from the evidence that the oral contract was not to be effective until reduced to writing." (Emphasis supplied.)

No exception was taken by the appellants to the foregoing charge nor was any request submitted that it be made more specific nor that it include the alternative. The jury here must have concluded that neither oral contract was for a period exceeding one year. The evidence supported such conclusion.

Appellants insist that the trial court's denial of their motions was based upon "a misconception of the evidence". They point out as error the court's statement in its opinion:

> "I do not find that Kendle's testimony, as defendants argue, indicated that the minds of the parties did not meet as to the commissions, but, to the contrary, showed that their minds had met and that the discussions rose to the dignity of oral contracts for both years."

Appellants' argument is no more than to say that they do not agree with the conclusion which was reached on conflicting evidence. As we have pointed out, there was sound basis in the testimony for the trial court's statement. The appellants also criticize the court's statement:

> "The Court finds no testimony of Kendle to that effect, [that the oral contract of February, 1956, contemplated employment for a period of more than one year] but does find that he testified that the oral conversations in February, 1956 concerned only the working arrangement for 1956. The Court finds no merit in this contention of defendants."

Appellants criticize use of the word "only". While it is true that Kendle's

written proposal, offered but not accepted in 1955, contemplated a contract ending December 31, 1957, which would be for two years, such written agreement was not accepted by Wilkins nor entered into by the parties and Kendle testified that subsequently on February 1, 1956, an oral agreement for 1956 was concluded between the parties. As to that oral agreement, he was asked:

"Q. Were there any conditions left to be decided at a later date? A. None whatsoever.

"Q. And how long was that agreement to run? A. For the year of 1956."

We have examined the record and the trial judge's memorandum in detail and find no misconception of the evidence whatsoever. This case was submitted to the jury to determine questions of fact based upon conflicting testimony and its findings were sound. The court's charge was accurate and complete. The appellants have had a fair trial. The judgment complained of is affirmed.