## LEHIGH STRUCTURAL STEEL CO. v. GREAT LAKES CONST. CO.
### No. 299.

Circuit Court of Appeals, Second Circuit.
July 9, 1934.

Barker, Perrigo & Bonynge, of New York City (Robert J. Sykes and Albert Bonynge, both of New York City, of counsel), for defendant-appellant.

Roberts B. Thomas, of New York City (Roberts B. Thomas and A. Vincent Kleinfeld, both of New York City, of counsel), for plaintiff-appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This is an appeal by the defendant from a judgment for the plaintiff entered upon the verdict of a jury. The action is to recover damages for the breach of a contract by the defendant.

The defendant was awarded a contract for the construction of the United States Assay Office at Old Slip in the city of New York.

On September 3, 1930, the defendant sent a postal card to the plaintiff inviting it to bid for the fabrication and erection of the structural steel in the Assay building. Thereupon the plaintiff prepared a bid at $139,600 and transmitted it to the defendant at its Chicago office by mail. On October 7, 1930, the defendant wrote the plaintiff that its secretary, Pursell, would be in New York on October 9, and asked the plaintiff to get in touch with him in reference to the structural steel for the Assay building. Plaintiff's vice president, Mullen, called on Pursell at his hotel and discussed the bid that had been submitted, which Pursell said was too high. Mullen also met him again on October 10 and there was another discussion of a reduction of the price for the fabrication and erection of the structural steel, but without any agreement. On October 11 there was a further discussion in which Mullen suggested the exclusion of the vault steel and the steel for entrance door partition which had been included in the original bid and offered to agree upon "a price of $108,000 for the contract." The bid was written on a form headed: "Standard Proposal contract (adopted 1929 by the Structural Steel Board of Trade Inc.)." The clauses relating to the vault steel and the steel material for the entrance door partition were marked "out" in the margin, and at the head of the proposal which had been signed on behalf of the plaintiff by its vice president, Mullen, was written the following:

"Contract subject to Board of Trade Form" and also the following:

"10/11/30 Revised Proposal All structural steel erected exclusive of Vault steel as per P 2 & 3 below for the sum of 108,000.00

"Accepted Great Lakes Const. Co. J. R. Pursell."

A counterpart of the foregoing revised proposal was also subscribed:

"Accepted. Subject to St. Steel Board of Trade Contract—Lehigh St. Steel Co. T. R. Mullen, V. P."

The revised proposal accepted by Great Lakes Construction Company was retained by Mullen, and the counterpart accepted by Lehigh Structural Steel Company was retained by Pursell.

On October 14, 1930, the defendant telegraphed the plaintiff from Chicago asking whether the formal structural board of trade contracts had been mailed, and on October 15 the plaintiff telegraphed that they had been mailed, and, on the same date, mailed such contracts in triplicate in a letter requesting the defendant to sign and return two copies to it at its office in Allentown, Pa. On October 20, 1930, Mullen telephoned Pursell requesting the contracts he had forwarded. The latter replied that the defendant was threatened with labor trouble, but he expected the matter would be cleaned up that day and would send on the contracts. On October 29, Mullen called on Pursell and was told that labor trouble was threatened if the plaintiff did the work, so that the contract had been given to Bethlehem Fabricators, Inc.

Both the form on which was written "Accepted" and the structural steel board of trade form contained a clause that the plaintiff should have the right to select its employees "irrespective of their membership or non-membership in any organization."

After the plaintiff was told that the contract for the fabrication and erection of structural steel had been given to another corporation, it commenced this action to recover damages for breach of the agreement alleged to have been entered into between the parties on October 11, 1930. Judge Bondy, before whom the case was tried, left it to the jury to determine whether there was an agreement entered into at that time or only an understanding that there was to be an agreement when and if the arrangement was duly authorized by the defendant. He charged that, if the jury found that the parties did not intend to be bound until a formal contract was submitted and signed there was no

liability, but if, on the other hand, when the "proposal was accepted, they both intended to be bound thereby then that contract was complete on October 11th." Under this charge the jury rendered a verdict of $7,400 for the plaintiff. The defendant raises two principal contentions on its appeal:

(1) That the proposal signed "Accepted" by Pursell on October 11, 1930, was only a memorandum contemplating a subsequent formal contract and had no validity as a final agreement.

(2) That the instrument of October 11, 1930, even though it should be regarded as formally a final contract, imposed no obligation upon the defendant because there was no proof of any authority on the part of Pursell to execute it for the corporation.

The contention that the proposal accepted by Pursell on behalf of the defendant on October 11, 1930, did not amount to a contract is largely based on a line of authorities of which Winn v. Bull, 7 Ch. D. 28, is the one most frequently cited. The defendant in that case had agreed in writing to lease a house from the plaintiff for a specified term and rental. The writing stated that it was made "subject to the preparation and approval of a formal contract." The plaintiff's solicitor subsequently sent defendant's solicitor a draft of the proposed lease containing covenants on the part of the defendant to keep the premises in repair. The latter objected to taking a lease with such a covenant, and the plaintiff insisted that the formal lease should stand as drafted by his solicitor. Upon the refusal of the defendant to accept the lease as drafted, suit was brought against him for specific performance. The plaintiff's counsel argued that the preliminary memorandum was sufficiently clear in its terms and was equivalent to an agreement for a lease containing the "usual covenants." Jessel, M. R., gave judgment for the defendant. After recognizing the rule that, if there has been a final agreement, it is binding although there may be an express provision that a formal contract shall afterwards be prepared and signed, he clearly summed up the law thus:

"It comes, therefore, to this, that where you have a proposal or agreement made in writing expressed to be subject to a formal contract being prepared, it means what it says; it is subject to and is dependent upon a formal contract being prepared. When it is not expressly stated to be subject to a formal contract it becomes a question of construction, whether the parties intended that the terms agreed on should merely be put into

form, or whether they should be subject to a new agreement the terms of which are not expressed in detail. The result is, that I must hold that there is no binding contract in this case, and there must therefore be judgment for the Defendant."

This rule is illustrated in the decision of the New York Court of Appeals in Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 76, 29 L. R. A. 431, 43 Am. St. Rep. 757, where a written proposal to sell and deliver certain carloads of apples was accepted with the provision that the agreement should be expressed in a formal writing. The court held that the minds of the parties had met as to all the terms of the contract and that the subsequent failure to reduce it "to the precise form intended * * * did not affect the obligations of either party, which had already attached. * * *" As Justice Holmes said in American Smelting Co. v. United States, 259 U. S. at page 78, 42 S. Ct. 420, 421, 66 L. Ed. 833: "The expressed contemplation of a more formal document did not prevent the letters from having the effect that otherwise they would have had." See our decisions in Bondy v. Harvey (C. C. A.) 62 F.(2d) 521, and United States v. P. J. Carlin Const. Co. (C. C. A.) 224 F. 859, to the same effect.

■ In the case at bar it is perfectly clear that the minds of the parties had met as to all details. The situation was not like that in Winn v. Bull, supra, where provisions of the agreement still remained to be adjusted by the attorneys for the parties. That the form of the contract was definitely adopted is plain from the words, "Contract subject to Board of Trade Form," and "Subject to St. Steel Board of Trade Contract." The preliminary contract likewise prescribed the terms of the instrument that was to follow, and the formal contract forwarded for execution contained the same provisions with respect to plans and specifications, work to be done, price, terms of payment, times of delivery, storage of material, labor, and liability, as are set forth in the accepted proposal contract, and no suggestion is made that such formal writing did not embody the intention which the parties had theretofore expressed. Upon the evidence adduced, we think the trial judge would have been justi-

fied in instructing the jury that the accepted "proposal" created a binding obligation upon the defendant if the acceptance was duly authorized.

■■ The accepted "proposal" contained the provision that "the buyer agrees to furnish satisfactory proof of his ability to make payments as agreed." This clause did not render the contract without consideration because of any reserved right of the plaintiff to object to proof of the ability of the defendant to make the payments called for by the contract if plaintiff was really satisfied. If the proof were actually satisfactory to plaintiff, it would, upon any theory, be bound. Dissatisfaction on its part would have to be genuine. Some statements in our opinion in Bondy v. Harvey (C. C. A.) 62 F. (2d) 521, at page 524, to the effect that "mutual satisfaction" meant "reasonable satisfaction" should be taken as relating to the kind of proof that would tend to establish genuine satisfaction. In the present case it not only is evident that the plaintiff was satisfied, but there is also reason to suppose that the satisfaction referred to in the agreement was that of "a reasonable man in the promisor's position." Restatement, Contracts § 265 (American Law Institute). Plainly the clause did not render the contract without consideration. The plaintiff could dispense with the necessity of proof by obtaining information from other sources or by waiving its right to insist upon proof as was done when it sued for breach of contract.

■ The only remaining question is whether Pursell, the secretary of the company, had authority to bind the defendant at the time when he signed the acceptance. He was a general officer of the corporation, negotiated the contract here, and within a month after the acceptance was signed made three other contracts on behalf of defendant. Under such circumstances, we can feel no doubt that Pursell had the necessary authority to act for the company in the course of its ordinary business and to bind it by the agreement with the plaintiff. Hastings v. Brooklyn Life Ins. Co., 138 N. Y. 473, 479, 34 N. E. 289; Hotel Woodward v. Ford (C. C. A.) 258 F. 322; Sun Printing & Publishing Ass'n v. Moore, 183 U. S. 642, 22 S. Ct. 240, 46 L. Ed. 366.

Judgment affirmed.